The H. S. Hopkins Bridge Company v. S. E. Burnett.

No. 7299.

1. **Master and Servant — Defective Tools — Care by Employe.—** Burnett, a foreman of a crew engaged in building an iron bridge, in employ of appellant, while using a steel hammer had an eye put out by a splinter from the hammer. He sued for damages for the injury. There was no evidence that the brittleness of the metal of the hammer rendered it defective, or unsuitable for the character of work in which Burnett was using it when injured. The undisputed testimony was that all steel hammers are brittle, if made hard enough to work with. The hammer used was too small, and this was apparent. There was no issue whether Burnett knew, or could have known by using ordinary care, of the defects, from brittleness or its size. *Held.* a charge submitting these defects to the jury was to try the case upon a wrong theory, and was misleading.

2. **Care by Employe to Avoid Injury.—** It being manifest that the hammer used by Burnett when injured was not adapted or suitable for the work in which he was engaged, the court should have charged the jury that if the plaintiff knew, or by ordinary care could have known, that the hammer was defective, he having selected it for his own use, he could not recover.

3. **Proper Care by Employe.—** There being evidence that by an unskillful blow by the plaintiff with the hammer a splinter from it was detached and struck his eye, there should have been given in charge the effect of contributory negligence on his part.

4. **Ordinary Risks of Employe.—** All of the witnesses testifying that the chipping of the scales or splinters was one of the ordinary risks incident to any work in which steel hammers are used, the court when requested should have charged the jury that the plaintiff, in entering the employment of the bridge company, assumed the usual and ordinary risks incident to the service for which he was employed.

APPEAL from Hood.  Tried below before Hon. C. K. BELL.

*Pendleton, Chapman & Powell,* for appellant.—1. The master is not liable to a servant who with knowledge of defects in tools receives an injury while working with such tools.  Railway v. Conrad, 62 Texas, 627; Railway v. Lempe, 59 Texas, 19; Railway v. Drew, 59 Texas, 10.

2. When the pleading and the evidence raised the issue of contributory negligence, that issue should be submitted to the jury.

3. When there is no evidence to support an allegation, its truth or falsity should not be submitted to the jury.  Pasture Co. v. Preston & Smith, 65 Texas, 448.

4. The evidence shows that the hammer was not suitable for the work plaintiff was doing when he was hurt, and that he knew the fact.

5. If plaintiff was injured while using a defective hammer, and he knew that it was defective, he should not recover.

6. The person seeking a particular employment is presumed to know the ordinary risks incident to such employment.  Wood's Mast. and Serv., sec. 362.

7. The testimony shows that the flying of scales from steel hammers is a usual and ordinary occurrence in the handling of steel hammers.  Railway v. Conrad, 62 Texas, 627.

*J. L. Torrey* also filed an argument for appellant.

No brief for appellee reached the hands of the Reporter.

HOBBY, PRESIDING JUDGE, *Section A.*—This is a suit for personal injuries, brought by the appellee, plaintiff below, against appellant, defendant.  There was a trial by jury, resulting in a verdict for plaintiff for $3500, on which judgment was entered.  This appeal is therefrom by the defendant.

The ground on which the plaintiff sought to recover, as alleged in the petition, was:  That he was in the employment of the defendant, a company engaged in constructing an iron bridge over and across the Brazos River, in Hood County, for the Fort Worth & Rio Grande Railway Company.  That he was employed by defendant in July, 1887, to labor in the construction of said bridge, and that he did work and labor at said construction of said bridge in July, 1887, under direction of defendant's agent.  That it became necessary for him while so working to drive an iron pin or bolt, and rivet the same, in making some fastenings on said bridge.  That defendant negligently, etc., furnished him with "a frail and defective hammer" with which to drive said pin or bolt and rivet the same, which defendant knew to be frail and defective, and yet ordered

plaintiff to drive and rivet said pin with said hammer. It was alleged that plaintiff noticed the apparent defect in said hammer, and called defendant's attention thereto; but defendant negligently, etc., assured plaintiff, that he "knew it to be safe, sound, and all right," and commanded him to use the same.

Appellee testified: That "Nothing was said about the kind of work he was to do. He worked generally for the defendant, at one thing and then another, until a short time before he was injured, when Mr. Higley, the superintendent of defendant, told him to go to 'riveting.'" He worked at this a few days. He had had but little experience at this work. One of the riveters was sick, and he was put at the work. "It takes three men to rivet; one, called a 'holder-up,' and two others, who do the 'riveting' proper. The cord we were at work on consisted of four or five flat pieces of iron placed on top of each other, with holes in them intended to correspond, but when they do not correspond exàctly we take a steel drift pin and drive it from the top into these holes, until the holes in all the pieces are even with each other. This pin is driven with what is called a 'flogging maul,' weighing eight or ten pounds. After it is driven in, it is then driven back from beneath with the same maul; then a red-hot bolt is placed in the hole, and while the holder-up catches it from the bottom and holds it, the riveters rivet it at the top while it is yet hot. This work is done with a small hammer, weighing two pounds, called a riveting hammer.

"A short time before I was hurt, the flogging maul became unfit for use, etc. I called Mr. Higley's attention to this, and he told me to take the big hammer and use it. I told him it was too large, and then he told me to use the riveting hammer. I told him it was too small. He said the hammer was all right, to go ahead."

"Relying on these statements, and supposing that he knew," so testified the plaintiff, he continued the work, and was attempting to knock the pin out from beneath with the riveting hammer, when a part of the face of the hammer split or "chipped" off and knocked plaintiff's eye out.

The witness testified that there was not room, as he was standing, to use a large hammer. That there was one there, weighing twelve or fourteen pounds, but it was too heavy. He also testified, that "when Mr. Higley told me to use the riveting hammer, he further told me to use it until he could have the flogging maul fixed. That he would send it to the shop; can not say whether it was sent to the shop or not."

Ed. Lewellen, a witness for plaintiff, who was at work with him on the iron bridge at the time of the injury, and saw him when he received the injury, testified that the riveting hammer which plaintiff was using was not adapted to the work to which he was applying it. He did not hear any one tell plaintiff to use it. The witness had previously broken a flogging hammer, weighing six pounds. There were two of these. Plaintiff

should have used one of them. The riveting hammer is a tool furnished to do the "riveting" with. Plaintiff was injured by attempting to drive the drift pin out with an understroke of the hammer, striking the pin on the far side from him, with the near side of the face of the hammer, jumping a scale from the near side of the face of the hammer into his eye.

There is other evidence corroborating plaintiff's testimony, to the effect that Higley, when plaintiff informed him that the "flogging maul" or hammer was broken, told him to use a small hammer; to which plaintiff replied, that that hammer was too small for such use. Some of the witnesses say he then told plaintiff to take a sledge hammer, etc.

The superintendent of the bridge company, Higley, testified, that when he employed plaintiff, the latter represented that he was an experienced riveter. He then described the process of riveting as described substantially by plaintiff. He testified, that he did not tell plaintiff to use the riveting hammer for "drifting;" that it would be a waste of time to use it, and contrary to all of his experience. The "flogging maul" and "sledge hammer" were of the same material, and in all respects similar, except that the former has a face on each end, and the sledge has one on one end only. They were used for the same purpose. There were two riveting crews. Plaintiff was foreman of one. His crew had a defective maul, but had a sledge hammer adapted to the work of driving the drift pin out. Such is a part of the testimony of Higley.

All of the witnesses who testified on that point concur in the statement that the riveting hammer was not adapted to the purpose for which plaintiff used it.

There was proof that it was a common and ordinary occurrence for chips and splinters to fly from steel hammers. One witness on this point testified, that he "had never seen a hammer that wouldn't chip if a glancing lick was struck with it. That it was one of the ordinary risks of the business requiring the use of steel hammers." Jesse Baker, another witness, testified to that fact. Higley testified, that there was no danger attending the work of riveting further than that growing out of the ordinary risks incident to chips and splinters flying from the tools. That all steel hammers are liable to chip.

F. L. Johnson testified, that "plaintiff was hurt by a scale flying off the hammer and striking him in the eye; he was in a stooping position, and was backing out this drift pin; he was drawing it up from the bottom, and by an unskillful blow struck the edge of the hammer on the drift and knocked the chip in his eye." The hammer plaintiff was using was one "he picked out himself, and branded with the letter 'E' so he would know it; Higley did not tell him to use it."

The court charged the jury, that if they "believe from the evidence that the plaintiff was employed by the defendant, and that defendant furnished plaintiff with an unsafe hammer with which to work—that is, with

a hammer which, owing to its size, or to the brittleness of the metal of which it was made, was defective for the character of work which he was doing for the defendant—and that defendant knew, or by the use of reasonable care could have known, of the defectiveness of said hammer for such work, and if plaintiff called the attention of defendant's agent and manager, Higley, to the defectiveness of said hammer, and that the said Higley then assured and told the plaintiff that he knew the said hammer to be sound, safe, and all right, and commanded plaintiff to proceed to work with said hammer, and that plaintiff did so in consequence of said assurance, and in the progress of such work that the said hammer broke and that a fragment of it struck plaintiff in the eye and injured it, then you will find a verdict for the plaintiff, and assess his damages at such sum as you may find him entitled to under instructions hereinafter given you, not exceeding $10,000, unless you should find that such injury resulted from contributory negligence of the plaintiff," etc.

The jury were further told, that if Higley did not assure plaintiff that the hammer was sound, safe, and all right, and command him to use it, or if it was sound, etc., and suitable for the purpose for which it was directed to be used (if so directed), or if it was defective, but defendant could not have known it by proper care, the verdict would be for defendant.

The jury were also told, that if they found that all the facts existed specified in the first paragraph of the charge, they would still find for the defendant, if plaintiff did not use ordinary care, etc.

We do not deem it necessary to dispose of each of the twenty-one assignments of error. Nor is it important, we think, to consider all of the questions raised, in the order set forth in appellant's brief. We will therefore consider only those questions which are raised on this appeal, and which determine the rights of the parties.

About one-half of the assigned errors relate to instructions refused by the court, which appellant's counsel requested should be given. Several of the remaining assignments complain of the charge given.

While the general charge of the court is not subject to all of the criticisms contained in appellant's brief, it fails, we think, to conform to the case, as made by the proof before the jury, with that particularity which numerous cases in our State have held to be essential to a charge correctly submitting the law of the case.

There was no evidence that the "brittleness of the metal of the hammer rendered it defective or unsuitable for the character of work the plaintiff was using it for when he sustained the injury." The undisputed proof was, that "all steel hammers were brittle if made hard enough to work with." And in this case the evidence showed that the hammer was too small for the work of driving out the drift pin. That its unsuitableness in this respect was apparent to the plaintiff is shown by his own testimony.

There was no issue made as to whether the defendant knew, or could by the use of ordinary care have known, whether it was defective, by reason of its brittleness, for the work plaintiff was using it for, or whether it was too small for this purpose.    There was no proof of the former, and it was not controverted as to the latter.    And yet the charge, it seems to us, was calculated to impress the jury that such were the issues in the case.    The effect of the charge, we think, was to try the case upon a wrong theory.

It is manifest from the proof in this case, that the hammer which plaintiff was using when injured was not adapted to or suitable for the work of removing the drift pin.    He alleged and proved this fact.    He was foreman of his riveting crew; knew the purpose for which the hammer was used.    It was his hammer, "selected by him from among six others, and branded with the letter E, so he would know it."    He stated to Higley before using it that "it was too small."

To present this phase of the case, the defendant asked the court to instruct the jury, that if they found that the injury sustained by the plaintiff was occasioned by the use of a defective hammer, and that plaintiff knew that fact before he was injured, or if he could have, by the exercise of ordinary diligence, ascertained it, the verdict should be for the defendant.    This, or a similar instruction, should have been given, as there was nothing in the general charge on this branch of the case.

Again, the court was asked to charge the jury, that if they believed from the evidence that defendant was not exercising proper care, such as a man of ordinary prudence would have used under similar circumstances, and such want of care contributed to or produced the injury, the verdict should be for the defendant.    The charge fails to properly submit the question of contributory negligence on the part of the plaintiff.

There was proof that plaintiff was in a stooping position, and "was backing out the drift pin.    He was drawing it up from the bottom, and by an unskillful blow struck the edge of the hammer on the drift pin and knocked the chip in his eye."    This proof certainly called for the submission of the question of contributory negligence as a part of the law of the case.

The court was also requested to instruct the jury, that the plaintiff in entering the employment of the defendant assumed the usual and ordinary risks incident to the service for which he was employed, and if they found that he was employed for the purpose of riveting, and that the "flying or chipping of scales" from the tools used for riveting was one of such risks, and he was injured thereby, the verdict should be for defendant.

All of the witnesses who testified on this point concurred in the statement that the "flying" or "chipping" of the scales or splinters was one of the ordinary risks incident to any work in which steel hammers were

used; that such hammer, sufficiently hard to work with, was likely to "chip or splinter." All such hammers, it was said by the witnesses, were liable to chip. That the evidence called for a charge upon this feature of the case, we think is obvious. The rule announced was decided in Railway v. Conrad, 62 Texas, 628, a case very similar to the case before us.

As before stated, we do not consider it necessary to discuss any other questions presented by the assignments. For the errors indicated in the opinion, we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted May 24, 1892.