# CHICAGO, R. I. & P. RY. CO. v. LILLARD.

### No. 3259.   Opinion Filed May 12, 1914.

### (141 Pac. 8.)

1.  **MASTER AND SERVANT** — Appliances—Machinery—Inspection. When the appliance or machinery furnished employees is at all complicated in character or construction, the employer is charged with the duty of making such reasonable inspection as is necessary·to detect defects; but the master is under no duty to inspect simple or common tools, or to discover or remedy defects arising necessarily from the ordinary use of such instruments.

2.  **SAME**—Injury to Servant—Tools—Inspection—Instructions. Where an employee is injured in adjusting an ordinary, blunt-ended, straight drill bit, thirteen-sixteenths of an inch in size and eight inches in length, by tapping it into the socket with a hammer, it is error to instruct the jury that "it is the duty of the employer to use ordinary care in furnishing to his employees safe and suitable appliances with which to perform the work required of them, and also to see that the same are kept in proper repair, and use ordinary care in making proper inspection of the tools as will protect the employees against dangers incident to their employment," without qualifying such instruction by a statement of the law applicable to the use of simple tools and appliances.

(Syllabus by Harrison, C.)

*Error from District Court, Seminole County;*
*Tom D. McKeown, Judge.*

Action by H. G. Lillard against the Chicago, Rock Island & Pacific Railway Company for damages. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*C. O. Blake, H. B. Low, R. J. Roberts, W. H. Moore,* and *Willmott & Dean,* for plaintiff in error.

*J. T. Williams,* for defendant in error.

Opinion by HARRISON, C.   This was an action brought by plaintiff for injuries resulting in the loss of his ·eye in endeavoring to drive a steel drill bit into a socket preparatory to drilling a hole through a sheet of steel. Plaintiff was an employee operating a drilling machine in defendant's shops in Shawnee. The bit in question, as it appears from the record, was an

ordinary, hardened steel, blunt-ended straight bit, thirteen-sixteenths of an inch in size and about eight inches in length, flattened on each side of the top end so as to prevent its turning in the socket into which it was being placed for operation. It appears that, in adjusting these bits in the socket in which they were intended to work, it was necessary to tap them with a hammer or mallet in order to drive them far enough into the sockets that the flattened end or head of the bit would enter a slot and prevent its turning in the socket when the machinery for drilling started.

It is contended by Lillard that the flattened end of the bit in question had at some time become twisted off, thereby leaving no flattened surface to fit into the slot of the socket, and thereby necessitating that it be driven tighter into the socket so as to hold it and prevent it turning when the machinery started. And it is alleged, and this point is not denied, that, in tapping the bit so as to drive it tighter into the socket, a sliver or piece of steel struck Lillard in the eye, putting his eye out. It is contended by counsel for Lillard that the piece of steel which put his eye out flew from the twisted end of the drill and escaped through a slot in the socket which is about an inch in length by a quarter of an inch in width and maybe about two and one-half inches above the mouth of the socket so as to enable the driller to look through the slot and see when the end of the drill had reached its proper place, and also to furnish an opening for the insertion of a wedge by which the bit was loosened and taken out when they were through with it. At least, counsel for Lillard presents his case on the theory that the piece of steel which put out Lillard's eye came from the twisted top end of the drill and escaped through the slot in question as plaintiff tapped the drill into the socket. As to whether this theory is correct, or whether the particle of steel came from the point of the hardened bit where plaintiff was tapping it with his hammer, it is impossible to tell. Plaintiff himself testified he had no idea where it came from, but that he was stooped over with his face about even with the drill, and that maybe in tapping it too hard he had caused the piece of steel to fly off and strike him in the eye.

The cause was tried, resulting in a verdict and judgment against the railway company in the sum of $2,500, and, from such judgment, the railway company appeals.

Numerous errors are assigned and argued at length; but, as we view the case under the record, and the well-settled rule of law applicable to such cases, there is one material error which necessitates a reversal of the judgment, viz.: That the instructions of the court on the duty of the master to furnish safe tools and appliances for the use of servants, and its duty to inspect them and keep them in repair, were too broad to be properly applicable to the issues made by the pleadings and evidence in this case. The theory upon which the plaintiff based his right of recovery was that the bit in question was defective and unfit for use, in that the top end or head of the bit had been twisted off, and that, the plaintiff being compelled by order of the foreman of the machine shops to use a defective bit, and his injuries having resulted from the use of such defective bit, the company should be held liable for the consequences. Upon the other hand, it is contended by the railway company that the bit in question was so simple in its make and construction that any existing defect could, by the exercise of any degree of care and prudence on the part of the plaintiff, have been as easily seen by him as by the master himself, and that therefore the case came within the rule as to simple tools and appliances, and that the court's instructions were inapplicable to that class of tools or appliances, and therefore misleading and erroneous.

The court instructed the jury on this phase of the case as follows:

"You are instructed that it is the duty of the employer to use ordinary care in furnishing to his employees safe and suitable appliances with which to perform the work required of them, and also to see that the same are kept in proper repair, and use ordinary care in making proper inspection of the tools, as will protect the employees against dangers incident to their employment."

This instruction, it is claimed by plaintiff in error, does not correctly state the law applicable to the facts in the case at bar, in that it imposes upon the master a higher degree of care than

the law requires where the character of tools or appliances to be used are as simple and easily understood as the one in question. A great number of authorities are cited in support of this contention. We believe the contention should be sustained. The bit in question was an ordinary steel blunt-ended bit, with no complications whatever as to its mechanism. The plaintiff testified that he had worked at this kind of work for some time, during which time he had drilled all kinds of holes with these bits, thereby qualifying himself as being just as capable of perceiving any defects in the bit, especially such defect as having the flattened end twisted off, as was the foreman of the machine shops, and it cannot be denied from the record that whatever injury he sustained was caused by attempting to drive this plainly defective bit into the socket. No complication whatever about the bit or the manner of its adjustment. Nothing to do but to place the top end of the bit in the socket and tap it with a hammer or mallet so as to drive it into the slot. The simplicity of the bit is sought to be avoided by defendant in error in his brief by the contention that the drilling machinery was a very complicated, rapid running set of machinery. This may be true; but the defendant was not injured in operating the machinery. Had the machinery been in operation with all of its complications and powerful forces, and plaintiff received the injury while operating it in an attempt to bore with this defective bit, the rule would have been wholly different. But the machinery was not in operation, nor did the injury result from the operation of the machinery. It resulted from the act on the part of the plaintiff in tapping the bit into the socket, an act just as simple, it seems to us, as putting an ordinary auger bit into a brace, and we must hold, therefore, that the act in which plaintiff, under his own testimony, received the injury comes clearly within the well-settled rule as to the degree of care required of the master in the use of simple tools and appliances, and that the instructions of the court as to the degree of care required were well calculated to mislead the jury to defendant's material prejudice. While the instruction in question may be correct as a general abstract proposition of law, it is an

erroneous application of law to the issues involved in the case at bar.

In the case of *Longpre v. Big Blackfoot Milling Co.*, 38 Mont. 99, 99 Pac. 131, it was held:

"It is not the duty of a railroad company or other persons engaged in great industrial enterprises to inspect, much less to test, every tool or appliance put into the hands of an employee. This duty arises only when the appliance is of such a character that a man of ordinary prudence would, under the same circumstances, make the inspection as a precaution against injury to his servant. The master is not required to inspect simple appliances, such as hammers, saws, spades, hoes, lanterns, push sticks, and the like, the character and use of which are understood by all alike. A tool of this class is so simple in its construction and so well understood by men of ordinary intelligence that it would seem absurd to say that the master should make a careful inspection of it before he commits it to the hands of his servant, who has the same capacity to understand its character and uses that he himself has  *  *  *"
—citing *G., C. & S. F. Ry. Co. v. Larkin*, 98 Tex. 225, 82 S. W. 1026, 1 L. R. A. (N. S.) 944.

In *Miller v. Erie R. Co.*, 21 App. Div. 45, 47 N. Y. Supp. 285, the court said:

"There is no duty resting on an employer to inspect during their use those common tools and appliances with which every one is conversant."

In *Marsh v. Chickering*, 101 N. Y. 396, 5 N. E. 56, the court, after stating the general rule of the duty of the master to furnish safe tools and appliances, said:

"The rule stated, however, is not applicable in all cases, and, where the servant has equal knowledge with the master as to the machinery used or the means employed in the performance of the work devolving upon him, and a full knowledge of existing defects, it does not necessarily follow that the master is liable for injury sustained by reason of the use thereof."

In *Wachsmuth v. Shaw Electric Crane Co.*, 118 Mich. 275, 76 N. W. 497, it was said:

"In heavy or complicated machinery, and where the person called upon to use the appliance may not possess the skill to detect unfitness, or the opportunities to do so, the law may require diligence upon the part of the master; but where the ap-

pliance is a common tool, of which the man who uses it is necessarily well qualified to judge, * * * when he uses it, has an opportunity to know its condition, a distinction may be made, and the master may rely upon the servant to inform him of the defect, or not use the tool if it is unsafe."

—citing 1 Labatt on Master and Servant, sec. 161; *Rawley v. Colliau,* 90 Mich. 31, 51 N. W. 350; *Kehoe v. Allen,* 92 Mich. 464, 52 N. W. 740, 31 Am. St. Rep. 608; *Miller v. Railroad Co.,* 21 App. Div. 45, 47 N. Y. Supp. 285; *Marsh v. Chickering,* 101 N. Y. 396, 5 N. E. 56.

The same rule is announced, and same authorities followed, in *O'Brien v. M., K. & T. Ry. Co.,* 36 Tex. Civ. App. 528, 82 S. W. 319.

In *Koschman v. Ash,* 98 Minn. 312, 108 N. W. 514, 116 Am. St. Rep. 373, the court said:

"When the appliances or machinery furnished employees are at all complicated in character or construction, the employer is charged with the duty of making such reasonable inspection as is necessary to detect defects. But the master is under no duty to inspect simple or common tools, or to discover or remedy defects arising necessarily from the ordinary use of such instrument."

—citing all of the authorities, *supra,* and many additional cases.

In *Stirling Coal & Coke Co. v. Fork,* 141 Ky. 40, 131 S. W. 1030, 40 L. R. A. (N. S.) 837, the court said:

"It must be recognized by every one that the rule of safe tools and appliances should not be extended to every tool and every appliance that is used by laborers and servants in the ordinary everyday affairs of life. * * * If the servant in every possible field of labor should be protected by this rule, and have the right to seek damages in the courts for the most trifling injury suffered in the ordinary and usual use of these simple things, the master in every state of case that can be imagined would be held accountable for accident or injury, and thus a useful and valuable rule would be converted into a constant source of vexation and apprehension. The further effect would be to encourage servants to be entirely indifferent to their own safety, and furnish them an ever-present incentive to litigation."

See, also, *Pope v. St. L. & S. W. R. Co.* (Tex. Civ. App.) 135 S. W. 1066, and *Cole v. Spokane Gas & Fuel Co.,* 66 Wash.

393, 119 Pac. 831, citing and following the rule announced in the foregoing authorities. See, also, *St. L. & S. F. R. Co. v. Mayne,* 36 Okla. 48, 127 Pac. 474, 42 L. R. A. (N. S.) 645, wherein this court, following the same rule, citing many of the same decisions herein cited, said:

"An auger bit, the cutting points of which have become shortened and dull from use and frequent sharpening, is an ordinary simple tool, with the use and condition of which a servant of experience has as much or greater knowledge than the master. * * *"

Counsel for Lillard contends, however, that Lillard called the foreman's attention to the broken condition of the bit, and testified that the foreman swore at him, spoke to him impatiently, and told him to hurry up with the job, and that, in obedience to such hurry up order, defendant, in attempting to use the broken bit, was injured. But the record does not show that the foreman instructed Lillard to use this particular bit. It merely shows that the foreman told him to hurry up with the job, and the foreman's order did not any more purport to command him to use that particular bit than it did to get a better one, provided he hurried up with the job.

In view of these circumstances, and in view of the fact that plaintiff was not injured while operating the defective drill, but sustained his injury in one of the simplest acts of a mechanic's work, merely tapping a drill bit into its socket, the instruction complained of is obviously inapplicable to the issues involved and prejudicial to the rights of the defendant.

For these reasons, the judgment should be reversed, and the cause remanded.

By the Court: It is so ordered.