## FT. SMITH & W. R. CO. v. HOLCOMBE.

No. 6887—Opinion Filed May 29, 1916.
(158 Pac. 633.)

1. **Master and Servant—Injuries to Servant —Tools and Appliances—Inspection.**

It is the duty of the master to use ordinary care to provide his employes with reasonably safe tools and appliances, and from time to time inspect such tools and appliances, and use ordinary care in keeping them in reasonably safe condition, but he owes no duty to the employe of inspecting simple tools where the defects are necessarily obvious.

2. **Same—Defects In Tools—Knowledge of Defects.**

Where a simple tool becomes defective, and the master had actual notice of such defect, and the servant injured had no knowledge of such defect, and injury results from the use

of such tool by a fellow servant. the master is liable.

### 3. Same — Tools and Appliances — Negligence of Master.

H. was injured by the head of a steel maul flying off the handle as it was being used by a fellow workman. This workman knew of the defect in the maul and had notified the foreman of said employes, whose duty it was to repair defective tools. H., who was not using or holding the tool, had no knowledge of the defect. Held, notice to the foreman was notice to the master, and the master was negligent in the breach of a positive duty, that of repairing a known defect.

### 4. Same—Assumed Risk—Negligence of Master.

H., a member of a bridge gang, impliedly assumed the ordinary risks incident to his employment, among which was such accident as a maul flying from its handle and striking him, but did not assume any risk of the master's neglect or breach of duty to repair a known defect.

### 5. Trial — Instructions — Construction as a Whole.

Where the trial court generally instructed the jury in plain and simple language defining the issues made by the pleadings, and the law applicable to the facts as proven in the trial, error predicated upon definitions of legal terms, correct as far as the definitions went, but incomplete, held harmless.

(Syllabus by Clay, C.)

Error from District Court, Okfuskee County; John Caruthers, Judge.

Action by George Holcombe against the Ft. Smith & Western Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Warner & Warner, for plaintiff in error.

W. N. Maben, for defendant in error.

Opinion by CLAY, C. For convenience the parties hereto will be designated as they appeared in the trial court, plaintiff and defendant. respectively. In this case George Holcombe brought suit for personal injuries alleged to have been received by him while working as a member of a bridge gang and as a servant of the defendant, the Ft. Smith & Western Railroad Company. The injury is alleged to have occurred by reason of a maul flying off the handle while being used by a fellow servant and striking him in the head, and he alleges that the defective condition was known to the foreman of the bridge gang and to the fellow servant using the same, and was unknown to him. The defendant answers by a general denial, alleging contributory negligence, and that plaintiff assumed the risk as incident to his employment. Upon trial to a jury a verdict was rendered for plaintiff in the sum of $1,-000, upon which judgment was rendered, and to reverse this judgment the case is brought here by petition in error for review.

The defendant presents its assignments of error in four propositions, viz:

First. The case at bar is one to be governed solely by the federal laws and decisions. This proposition is apparently conceded in so far as the federal courts have decided the question presented in this case, and therefore will not be discussed. St. Louis & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083; Railway v. Lenahan, 39 Okla. 283, 135 Pac. 383; Railway v. Hesterly, 228 U. S. 702. 33 Sup. Ct. 703, 57 L. Ed. 1031; Roberts, Inj. Int. Em. secs. 1 and 7.

Defendant urges that the demurrer to plaintiff's evidence and its request for a peremptory instruction should have been sustained: (a) Because no negligence was proven; (b) Because plaintiff assumed the risk of receiving the injury as one that was incident to his employment.

The general rule is well established that it is the duty of the master to exercise ordinary care to provide reasonably safe tools and appliances for his servants. This duty applies alike to simple and complicated tools. However, the law does not impose the same obligations with reference to the two classes of tools. The master must inspect the complicated tools and appliances from time to time and use ordinary care and prudence in keeping them in a reasonably safe condition. The master owes no duty of inspection of simple tools, for the reason that it is assumed that there is an equality of knowledge and ability on the part of the master and servant to discover such defects, and in most cases it is held that the servant who uses the tools has the better opportunity of discovering the defects. C. R. I. & P. Ry. Co. v. Lillard, 42 Okla. 109, 141 Pac. 8, and cases therein cited.

There is, however, an exception to the rule that the master is not liable for injuries from the use of simple tools selected with ordinary care. When a simple tool becomes defective, and the master has actual notice of such defect, and the servant injured has no knowledge of the defect, the master is liable for exposing the servant to a peril unknown to him and must respond in damages.

26 Cyc. at page 1142, lays down this rule:

"The master's liability for injuries to a servant arising from defects in the place for work, or in the machinery or appliances, is dependent upon his knowledge, actual or constructive, of such defects. If he knew, or should have known by the exercise of reasonable care and diligence, of their existence, he

is liable; negligent ignorance is equivalent to knowledge."

In the footnote, among other cases, reference is made to the case of Savannah R. Co. v. Pughsley, 113 Ga. 1012, 39 S. E. 473, which holds that where there is evidence that a fellow servant of the plaintiff was furnished with a defective tool by the master, with full notice of the defect, and that, by the use of the tool by the fellow servant, plaintiff, who had no notice of the defect, was injured, a verdict finding the master liable will be sustained.

In the case of Stork v. Cooperage Co., 127 Wis. 318, 106 N. W. 841, 7 Ann. Cas. 339, it is held that the rule that the master is not liable for defects in simple tools which cause injury has no application where the master has actual knowledge of such defects and the servant has none. Noble v. Bessemer S. Co., 127 Mich. 103, 86 N. W. 520, 54 L. R. A. 456, 89 Am. St. Rep. 461.

In this case the undisputed evidence shows that Bowers was foreman of the bridge gang, that Conrey, Todd, and Farmer were working on a drift bolt under a bridge, or culvert, using a sledge or maul with a wooden handle, which maul had a steel head weighing about eight pounds; that the plaintiff, engaged in work as one of the members of said gang, was passing near where Farmer was striking the bolt in clearing away the debris, which was a part of his duty, when the maul slipped from its handle and struck plaintiff in the head. One of the men, prior to the injury, while using the maul notified the foreman of its unsafe condition and asked to be allowed to fix it; but the foreman refused to allow the same to be repaired, and shortly thereafter plaintiff was injured. Plaintiff did not know of the dangerous or loosened condition of the handle of the maul, and had not been using it. The witness Conrey testified as follows (page 44, case-made):

"Q. Now, who were engaged in removing this drift bolt? A. Well, there were three or four of us at it; Farmer, Todd, and myself. Q. Do you know whether or not there was any accident occurred there while this drift bolt was being removed? A. Yes, sir. Q. Now, previous to the accident had you made any effort to remove the drift bolt? A. I had been hammering on it myself. Q. What were you using? A. An eight-pound maul, or sledge maul, as we call it. Q. Describe that maul to the jury as to its parts. A. Well, there was just a large maul, an eight-pound maul, on a wooden handle approximately three feet long. Q. Now, who used the maul after you used it? A. Sanford Farmer. Q. I will get you to state whether or not the foreman, Mr. Bowers, was there at the time you were driving this bolt. A. Well,

he was somewhere close; on top of the bridge I think, the best I remember. Q. Did you hear any one make any remark to Mr. Bowers with reference to the condition of the hammer there previous to the accident? A. I did; yes, sir. Q. Who was it? A. Henry Todd. Q. What did he say? A. Well, he wanted to tighten the handle up in the maul. He told him it was loose, and Bowers told him we didn't have time to tighten the maul, to go ahead and use it as it was. Q. Who said that? A. Bowers. Q. The foreman? A. Yes, sir. Q. Was he in charge of those men there? A. Yes, sir. Q. Was any repairs made on the hammer previous to the accident? A. None that I know of. Q. Who was using the hammer at the time the accident occurred? A. Farmer. Q. Did you see the accident? A. I did; yes, sir. Q. Now, what had Mr. Holcombe been doing? A. Well, it is all kinder hard to remember. The best I remember, he had been carrying out the stuff or working about the drift bolt, or somewheres there under the bridge. Q. Now, tell the jury what happened when this hammer hit Mr. Holcombe. A. Well, I seen the hammer hit him, and it knocked him over and into a wire fence, to the best of my recollection."

Mr. Bowers on his cross-examination testified about this matter as follows:

"Q. Now, you heard Mr. Todd when he said that that maul there was loose on the handle, didn't you? A. Well, now I don't remember about that. I thought I had it in my head that way, but I filled out my report, and I find it was not that way, hardly. Q. It was your duty to inspect the tools, wasn't it? A. Of course, I leave that kinder up to my men; but, of course, they kinder look to me to look after such as that. Q. It was your duty to see that things were kept in repair that became defective? A. Well, yes, it was. Q. Didn't Mr. Todd make the remark that that maul was loose on the handle, and didn't you say, 'Well, we are in a hurry and haven't got time to fix it now.' A. Well, I don't remember whether I said that for sure or not. I would not answer that I did or didn't. Q. At any rate, no repairs were made on this maul? A. No, there wasn't any made that I seen. Q. Well, you told him you were in a hurry and wanted that work done, that there was a train coming eastward? A. A train coming, yes; but I don't remember that I said east. Q. You didn't give Mr. Holcombe any notice, or any of the rest of the men there any notice, that this maul was loose on the handle, if it was loose, did you? A. No sir; I didn't."

The evidence above quoted shows that notice was given to Bowers, the foreman, of the defective condition of the maul just prior to the accident; and further shows that plaintiff had no knowledge or notice of its condition. This state of the evidence brings up for determination these questions:

(1) Was notice to Bowers notice to the defendant?

The evidence also shows that Bowers was employed to build bridges and depots, and, at the time of the injury to plaintiff, engaged as foreman in charge of a bridge gang in repairing a bridge for defendant; that, among the other duties, which he as foreman was called upon to perform, was that of repairing defective tools.

In Chapman v. Southern Pac. Co., (Cal.) 145 Pac. 551, it is held that notice to an employe of a corporation of defects in appliances, to one whose duty is to have repairs made, whatever the grade of his employment, is notice to the company. Pieart v. Railway Co., 82 Iowa, 148, 47 N. W. 1019; Railway Co. v. Babcock, 154 U. S. 198, 14 Sup. Ct. 978, 38 L. Ed. 958; Wagon Co. v. Kehl, 40 Ill. App. 583; Patterson v. Railroad Co., 76 Pa. 389.

In the case of Lehigh Valley Coal Co. v. Wavrek, 55 U. S. App. 437, 84 Fed. 866, 28 C. C. A. 540, it was held: Even in cases where it may be conceded that there was no duty of regular inspection of the tools in use imposed upon the supervising officers of the defendant, and he trusted to the daily inspection of the men who used the tools for information as to their condition of repair, yet, when such information was given to them, they, the officers, are the proper agents to fulfill the master's duty in furnishing reasonably safe tools.

In the case of Ohio & M. R. Co. v. Stein, 140 Ind. 61, 39 N. E. 246, it is said:

"The master is chargeable with knowledge which any employe intrusted with the duty of keeping instrumentalities in repair may acquire regarding their condition. Strauss v. Haberman Mfg. Co., 23 App. Div. 1, 48 N. Y. Supp. 425."

In the case of Cowan v. Umbagog Pulp Co., 91 Me. 26, 39 Atl. 340, an instruction that "the defendant would be responsible for the consequences of any want of diligence or due care or caution on the part of those whose duty it was to make repairs" is held correct.

"Repairing is, in a sense, furnishing." Tierney v. Minn. & St. L. R. Co., 33 Minn. 311, 23 N. W. 229, 53 Am. Rep. 35.

"That the duty to provide safe instrumentalities is a continuous one." Ind. Car Co. v. Parker, 100 Ind. 181; Nall v. Louisville. N. A. & C. R. Co., 129 Ind, 268, 28 N. E. 183, 611.

In the case of Sangamon Coal Mining Co. v. Wiggerhaus, 122 Ill. 279, 13 N. E. 648, one of the instructions informed the jury that if they believed from the evidence that an agent of the defendant, whose duty it was to

fix said door, or cause the same to be fixed, was notified that the opening of the door across the gangway was difficult and hard, then such notice was notice to the defendant. The defendant contended that notice to a coservant of appellee was not notice to the common employer, but the court said:

"We do not think it important to discuss the doctrine indicated by the objection urged. It is, we think, sufficient to say that, when a duty is imposed upon and intrusted to an agent by a corporation, notice to such agent of matters falling within the line of duty is notice to the corporation. The instruction. we think, stated the rule correctly."

It was tersely stated by Byles, Justice, in the case of Clark v. Holmes, 31 L. J. Exch. N. S. 356:

"If a master's personal knowledge of defects be necessary to his liability, the more he neglects his business and abandons it to others, the less will he be liable."

We do not think it necessary to multiply authorities on this question, but are of the opinion that a master is charged with that knowledge which any employe who is intrusted with the performance of any of the nonassignable duties of the master acquires with regard to the condition of the tools or implements to which his duties relate, among which nonassignable duties are those of repairing defective tools and implements. Note to Walkowski v. Penokee, and Gogebic Con. Mines, 41 L. R. A. 134; Cudahy Packing Co. v. Hays, 74 Kan. 124, 85 Pac. 811; Porter v. Hannibal St. Joe Co., 71 Mo. 66, 36 Am. Rep. 454; Texas & Pacific Ry. Co. v. Thompson, 70 Fed. 944, 71 Fed. 531, 17 C. C. A. 524; Tirney v. Minn. & St. L. R. Co., 33 Minn. 311, 23 N. W. 229, 53 Am. Rep. 35.

In the case of Regan v. Parker Washington Co., 205 Fed. 692, 123 C. C. A. 648, L. R. A. 1915F, 810, the first paragraph of the syllabus reads as follows:

"A master is liable for injury to a servant through breach of his own positive duty, although he commits the performance of such duty to a fellow servant of the person injured."

Notice to the foreman, whose duty it was to repair, being notice to the defendant, and the defendant having assigned to him the positive duty of repairing the known defect in the maul, the negligence of the foreman in failing to repair was the negligence of defendant.

It is urged by defendant that plaintiff assumed the risk of receiving the particular injury complained of from his fellow servant as one incident to his employment, and it cites a number of authorities is support of this contention, viz: Deckerd v. Ry. Co., 111

Mo. App. 117, 85 S. W. 983; Dwyer v. Shaw, 22 R. I. 648, 50 Atl. 389; Bridge Co. v. Burnett, 85 Tex. 16, 19 S. W. 886; Moran v. Brown, 27 Mo. App. 487; Mfg. Co. v. Nisbett, 205 Ill. 273, 68 N. E. 936. These cases, and others, cited by plaintiff in error, are all based upon the theory that, where simple tools are placed in the hands of an employe after proper selection, any defect occurring thereafter can as readily be detected by the servant using them as by the master, or that the employes engaged in the same task assume the risk from obvious defects unknown to the master or his agents. In the case of Dwyer v. Shaw, supra, quoting from the syllabus, it is said:

"Plaintiff was injured by the head of a maul flying off from the handle as the implement was being used by a fellow workman. This workman took the maul from a tool box, his own having been taken by some one else. There was no evidence as to how long the maul had been in a defective condition. Held not to show that the employer was negligent in not properly inspecting the tools, or had knowledge of the defective condition of the implement."

In the instant case, however, the evidence shows defendant had actual notice of the defective condition of the maul, and the foreman had refused to allow time to tighten the handle.

In the case of Martin v. Mfg. Co., 128 N. C. 264, 38 S. E. 876, 83 Am. St. Rep. 671, cited by defendant, it was said:

"But was there any apparent defect in the hammer? Or was there a defect known to the defendant or its agent?"

While the plaintiff impliedly assumed the ordinary risk incident to his employment, he did not assume a risk and danger known to the foreman, whose duty it was to repair, and which the plaintiff did not know. Here the master was guilty of a breach of a positive duty, that of repairing a known defect.

In the case of Regan v. Parker Washington Co., supra, Judge Humphrey, in delivering the opinion of the court, after reviewing the cases decided by the United States Supreme Court from a very early date to the date of his decision, says:

"Now, what deductions are to be made from these cases? Are the cases themselves reconcilable? Where does the court now stand on the question? With what exactness has the court defined who are fellow servants? And what formula, if any, has the court announced as a guide to the profession? We are of the opinion that the test to which the court brings us, and the one by which most, if not all, of the cases can be reconciled, is 'the character of the act in respect to which the negligence occurs.' If the master is guilty of the

breach of a legal duty, then he is liable, regardless of whether the breach was worked by one servant or another. A study of the opinions will show that the various phrases assumed risk, scope of employment, different department of service, relation in business of the two employes, and whether the risk is or is not obvious, have all given place to * * * the act about which the negligence occurs: whether there has been a breach of some positive duty of the master. If there has, then the master is liable, no matter what servant by his negligence caused that breach."

We are of the opinion that the trial court did not commit error in overruling the demurrer to plaintiff's evidence, or in refusing to peremptorily instruct the jury as requested by defendant.

Defendant complains of the action of the trial court in giving instructions Nos. 1, 2, 3, and 4, of its general charge.

Defendant complains of that part of instruction No. 1 which reads:

"But the (plaintiff) must go further and show by a fair preponderance of the evidence that it was defendant's negligence that was the proximate cause of his injuries in failing to provide a reasonably safe maul and handle for its employe."

This portion of the instruction, standing alone, is not the law, for the master's duty is to use ordinary care to provide reasonably safe tools and appliances for his servants. But we are not to single out any one of the expressions of the court and predicate error upon it. If upon a consideration of the whole charge the court gave a correct interpretation of the law, then there is no occasion to say the jury was misled as to the law. In paragraph 2 of instruction No. 2, we think the court corrected the omission complained of when the jury was instructed that:

"The law imposed upon the defendant company the duty to have used reasonable care in seeing that the maul was properly equipped and was in such an efficient state as to have been in a reasonably safe condition, and a failure on the part of the defendant to provide its employes with reasonably safe tools with which to work would constitute negligence."

While this portion of the instruction is not in the best form, still we think no prejudice resulted to defendant, in view of the fact that the defendant did not prepare and present to the court any correct instruction on the subject.

Defendant further complains of that part of paragraph 1 of instruction No. 1 which reads as follows:

"Negligence, in so far as it is necessary to define to you in this case, would be the

failure of the defendant company to provide a reasonably safe tool with which its employes were to do the work in which they were employed."

This portion of the instruction is subject to the same criticism as the one first discussed, and the same fault is complained of in that portion of instruction No. 3, set out in defendant's brief, and they are all discussed together.

As abstract statements of the law, these instructions do not define the duty of the defendant in respect to furnishing tools and appliances to its servants correctly, but in view of the evidence that notice of the defective condition of the maul was called to the attention of the foreman, whose duty it was to repair the same, and as no effort was made to remedy the defect, and the plaintiff had no knowledge of the defect, we think the error was harmless.

The court, in its fourth general instruction, in general terms instructed the jury:

"The plaintiff claims in his petition that the maul which struck him was in the hands of a fellow employe by the name Sanford Farmer, who was in the discharge of his duties as a member of the bridge gang, and that the foreman of the gang, as well as Farmer, knew that the handle which fit into the socket of the hammer or maul was worn loose and decayed, and did not fit tightly; that this fact was not known to the plaintiff; and that while in the exercise of every reasonable care and caution on his own part, and while responding to the commands of the foreman of the gang, in the discharge of his duties, and without fault on his part, he received the injuries complained of by reason of the hammer flying off the handle. And if you so find this to be the case, by a fair preponderance of the evidence, you should find for the plaintiff."

Now, in view of the above instruction, of the uncontroverted evidence of a failure to repair after notice of the defect, how could the errors complained of in the instructions be other than harmless? Mr. Justice Turner said, of a similar complaint about instructions:

"How can this error be other than harmless, since the admitted evidence shows that, after complaint, the master exercised no care at all, and in fact did nothing to make the place safe?" C., R. I. & P. Ry. Co. v. Townes, 43 Okla. 568 (143 Pac. 680).

Defendant complains of the trial court's refusal to give requested instructions Nos. 2, 3, 4, 7, and 8, all of which are instructions on the assumption of risk by the plaintiff. The trial court gave a charge on the assumption of risk, which we think substantially correct, the material part of which is:

"That plaintiff assumed the ordinary risk incident to the character of employment which he undertook; the greater the danger of employment, the greater the risk which was undertaken by him."

Requested instructions Nos. 1 and 9 we have examined, and find they are not applicable to the facts in this case, as we view it and have discussed it.

Finding no prejudical error in the record, we recommend that the judgment of the trial court be affirmed.

By the Court: It is so ordered.