OKLAHOMA PIPE LINE CO. v. PERRYMORE, Adm'r.

No. 30113.  May 5, 1942.

Rehearing Denied June 2, 1942.

Application for Leave to File Second Petition for Rehearing Denied June 16, 1942.

*126 P. 2d 518.*

L. G. Owen, Forrest M. Darrough, Joseph L. Seger, and Harry C. Chapman, all of Tulsa, and W. G. Stigler, of Stigler, for plaintiff in error.

Nat Henderson, of Stigler, and W. P. Morrison and John Morrison, both of Oklahoma City, for defendant in error.

CORN, V. C. J. This is an appeal from a judgment rendered in the district court of Haskell county, in an action brought to recover damages for pain and suffering of Thomas F. Perrymore, deceased, allegedly endured by decedent during his lifetime, as the result of injuries sustained while in defendant's employee, and as the result of defendant's negligence. The present plaintiff was substituted in lieu of other named plaintiffs, deceased's next of kin.

Plaintiff was employed by defendant as a common laborer, May 27, 1928; while standing in a ditch holding a drill bar, the head of an eight-pound sledge hammer, used by one Fulcher in drilling powder holes, either came off or broke off the handle and struck the deceased on the head, causing the injuries complained of.

The negligence alleged to have caused the injury was the defendant's alleged failure to furnish deceased with safe tools with which to work; deceased, as alleged by plaintiff, having been injured by a blow from the hammer, which broke because of a defective handle, striking deceased on the head and causing his injuries.

Recovery was sought for (1) $20,000 for loss of earning capacity; (2) $10,-000 for conscious mental pain and physical suffering; (3) $5,000 for expenses allegedly incurred for medical care and maintenance; (4) $40,000 for wrongful death of the decedent as a result of the injuries allegedly sustained.

Trial to a jury resulted in a verdict for plaintiff for $20,000. Motion for new trial was overruled, upon condition of a remittitur of $8,000. From this judgment defendant has appealed.

Numerous questions are raised by the briefs of the parties. However, having considered the entire record, we are of the opinion that it will be necessary to consider only one issue, viz., the application of the so-called "simple tool doctrine" to the facts of this case, inasmuch as we are of the opinion the application of this rule is decisive of the entire matter.

Because of the sharp conflict in the evidence, we shall briefly summarize the testimony concerning the injury. For the plaintiff the evidence showed substantially the following facts:

Anderson Smith, a blacksmith employed by defendant to repair tools used on the job, testified the hammer broke off at the eye, and that it had apparently been laid away damp, since it broke because of dry rot in the handle, and that the defect could be seen around the edge of the handle. He further testified it would take from six to eight months for this condition to develop.

R. E. Upton testified the hammer, which he saw after the accident, was

broken because of a rotten, faulty handle. One Cox then testified he saw the accident; that it was customary for the men to check out their tools; that they were not ordered to make an inspection of their tools.

John Lefler testified that a few hours before the accident he saw Fulcher, the employee working with deceased at the time of the accident, hand the hammer to the foreman, who looked at it and then handed it back to Fulcher.

For the defendant the testimony was substantially as follows: Gus Fulcher testified he was working with deceased at the time of the accident, drilling powder holes in the ground, one man holding the drill and one using the sledge, it being customary for the men to alternate in the use of these tools. Just prior to the accident, deceased had been using the sledge. After they had traded places, on about the third blow, the hammer struck the bit, bounced off the handle, and struck the deceased. The employees selected their tools from a box each morning, and it was the practice to examine the tool selected. He had examined the hammer that morning, and it appeared sound to him, and the deceased had also examined the hammer before using it. The hammer did not break, but came off the handle, and after the accident the hammer appeared sound.

Warren Coffee, foreman, testified he instructed the employees to never use tools in a bad condition, and that when a tool needed repair for them to take same to the blacksmith shop. He had checked the tools from time to time, and had examined the tools more than once.

Plaintiff offered rebuttal testimony to the effect that there was a shortage of tools on this job, and that Fulcher had stated he did not like this particular sledge hammer because he was afraid of it, but was told by Coffee to go ahead and use it.

The foregoing is a sufficient statement to indicate that hereafter we are concerned only with the question whether, when an injury occurs because of an alleged defect in a tool such as was in use at the time of deceased's injury, the employer is liable upon the ground that there was a failure to furnish safe tools with which to work. This, then, resolves itself into a matter of determining whether what is commonly referred to as the "simple tool doctrine" applies in this particular case.

The "simple tool doctrine" is an exception to the general rule that the master owes a duty of exercising reasonable care in furnishing his employees reasonably safe tools and appliances to be used in the work for which they are intended. This exception is a rule which is applied in those instances when the tools furnished by the master are simple tools, of such a nature that any defect therein, by reason of the very nature of the tool itself, should be obvious to the servant and, when an injury results in the use thereof, the master is not liable.

In 35 Am. Jur. § 177 p. 607, the statement is found:

". . . The so-called 'simple tool' rule is based on the ideas that ordinarily the employee has better opportunity than the employer to observe defects and guard himself against them, and that the employer should not be charged with the duty to care for the safety of an employee with respect to a matter in which the employee is in the better position to care for himself."

This principle has been recognized by this court in numerous cases. In Ft. Smith & W. R. R. Co. v. Holcombe, 59 Okla. 55, 158 P. 633, the following statement is made:

". . . The master owes no duty of inspection of simple tools, for the reason that it is assumed that there is an equality of knowledge and ability on the part of the master and servant to discover such defects, and in most cases it is held that the servant who uses the tools has the better opportunity of discovering the defects. Chicago, R. I. & P. Ry. Co. v. Lillard, 42 Okla. 109, 141 P. 8, and cases therein cited."

In the earlier case of St. Louis & S. F. Ry. Co. v. Mayne, 36 Okla. 48, 127 P. 474, 42 L. R. A. (N. S.) 645, we laid down the rule that in cases of injuries resulting from the use of simple tools the master was not to be held liable, since the master was not bound to inspect such tools for defects; this for the reason that it is assumed that there is an equality of knowledge and ability on the part of the master and servant to discover the defect, and, in fact, the servant probably has the better opportunity for discovery.

We have considered the application of this rule in the following cases. Chicago, R. I. & P. Ry. Co. v. Lillard, supra, where the servant was injured by a drill bit, declared to be a simple tool. Ft. Smith & W. R. R. Co. v. Holcombe, supra, where a maul caused the injury (although recovery was allowed on the ground that the master had actual notice of the defect and the servant had no knowledge of any defect). Woodruff v. Phillips, 138 Okla. 77, 280 P. 449, where the tool used was a hammer and punch. St. Louis & S. F. R. Co. v. Sears, 173 Okla. 483, 49 P. 2d 489, where the injury was caused by a pick, but the servant was allowed to recover for the reason the master had promised to remedy the defect, and in this manner assumed the risk.

Consideration of these and other cases disclosed that the simple tool doctrine is firmly established in this jurisdiction. Further study reveals that no absolute distinction has been announced by this court in regard to the two schools of thought established in regard to the rule, to wit: the Iowa rule, which inclines to the view that the master is first charged with the duty of inspecting the tools before they are put in use; second, the Montana rule, which holds that the master has no duty to make any inspection before furnishing the tools, because he has no duty of inspection from time to time, and is thereby relieved of this duty in the first place. This is based upon the reasoning that the very nature of the simple tool doctrine precludes the devolution of such a burden upon the master.

An examination of the cases from this court reveals that, although not absolutely declared as such, there has been a definite trend toward the reasoning in Longpre v. Big Blackfoot Milling Co., 38 Mont. 99, 99 P. 131, stating the Montana rule, which indicates that we at least adhere to the reasoning upon which this statement of the rule is based.

Inasmuch as the usual application of the simple tool doctrine negatives the possibility of recovery, it becomes necessary to further examine this matter, with the view of determining whether there exists any reason which precludes application of the rule to the matter now before us.

The evidence failed to establish whether the deceased or Fulcher selected the tool in question from among the tools furnished for the work being done. There was conflicting evidence as to whether there was a sufficient stock of tools on hand, but the surrounding circumstances negative the assumption that there was no possibility of selection at all, from among a number of tools furnished for this job.

The injury complained of occurred while the tool in question was being used by a fellow servant. The evidence shows that deceased and his fellow servant alternated in the use of the tool on the day of the accident, and also that deceased had been using the tool a few minutes before he was injured. Had there been an obvious defect in the tool, the deceased certainly had ample opportunity to ascertain for himself the existence of any defect. It is not material here which employee selected the tool, for if there was an obvious defect, in the absence of actual or constructive knowledge on the part of the master, then the servant was bound, at his own peril, to discover same. If this was an obvious defect, under the rule as laid down in Barnsdall Oil Co. v. Ohler, 48 Okla. 651, 150 P. 98, there was no right of recovery available to

the employee. Paragraph 2 of the syllabus of the cited case states:

"It is well settled that where a master has provided an adequate and readily accessible stock of appliances in good condition, from which to make a selection, and the imperfection of the instrumentality selected therefrom was, or ought to have been apparent to the servant who selected it, the master cannot be held responsible for injuries which were sustained by the instrumentality, whether the sufferer be the servant himself who made the selection, or a co-employee."

Neither does the possibility that there might have been a latent defect in this tool serve to destroy the necessity for applying the rule. Since we are concerned only with the application of the Montana rule to the matter before us, it is unnecessary to consider whether the defendant used ordinary care in determining whether such latent defect might have existed.

In St. Louis & S. F. Ry. Co. v. Mayne, supra, it was pointed out that, as to simple tools, the master has no responsibility for injury resulting from their ordinary use, or for latent defects which, by reason of the common character of the tool, must be presumed to be known by all men alike.

If this hammer was obviously defective, then the question arises whether defendant had actual or constructive knowledge of such defect, and whether such knowledge or notice would place responsibility upon the master.

The testimony in this connection, whether the defect was obvious, was that the defect in the handle was caused by dry rot which might occur during ordinary use of the tool. The physical facts, disregarding all testimony for the time being, negative the idea that the defect was obvious, for the reason that the alleged break occurred at the eye of the sledge hammer where the chances or opportunity for discovery upon inspection might be doubtful.

There was no evidence that defendant had actual knowledge of any defect.

Coffee, the foreman, testified he gave the tools a careful inspection more than once. One Lefler testified that he saw Fulcher hand this hammer to Coffee on the day of the accident, and that Coffee took it and then handed it back to Fulcher. From this alone plaintiff insists that Coffee must have seen the defect. Based upon this testimony we cannot say that there was a defect which must have been observed, and that this was sufficient to establish that defendant had any notice of any alleged defect.

As pointed out, under the application of the rule, if there was an obvious defect, defendant cannot be charged with notice thereof. If this was a hidden defect, then, upon the basis of the doctrine, defendant cannot be held responsible.

We are aware of the hardships which may possibly result from application of this rule. However, it is equally apparent that if liability is said to attach to the employer in such cases as this, then the master must become the absolute insurer of his employee, regardless of the work done or the tool used.

At the close of the evidence defendant moved for a directed verdict, and this motion was overruled. It is the rule that when passing upon a motion for a directed verdict the trial court must consider as true all the evidence supporting the party against whom the motion is directed, together with all reasonable inferences to be drawn therefrom, and decide whether there is evidence to reasonably sustain a verdict in favor of such party. Phillips Petroleum Co. v. Ward, 181 Okla. 462, 74 P. 2d 614; and where plaintiff's evidence wholly fails to sustain the allegations or some material element thereof, indispensable to recovery, the motion for a directed verdict in favor of the defendant should be sustained. Fidelity Union Gas Co. v. Adams, 174 Okla. 487, 50 P. 2d 284; Bell v. Radabaugh, 178 Okla. 106, 62 P. 2d 79.

We are of the opinion the evidence introduced by plaintiff wholly failed to show any primary negligence on the part

of the defendant and was, therefore, insufficient upon which to base any liability, and that for this reason the trial court erred in overruling defendant's motion for a directed verdict.

The judgment is accordingly reversed and the cause remanded, with directions to grant a new trial.

WELCH, C. J., and BAYLESS, GIBSON, and HURST, JJ., concur. RILEY and ARNOLD, JJ., dissent. OSBORN and DAVISON, JJ., absent.

---

ARNOLD, J. (dissenting). I cannot agree with the majority opinion in this case.

There are two principal contentions made by the defendant: (1) That the evidence as a whole is not sufficient to show negligence on the part of the master; (2) that the simple tool doctrine applies; that under this doctrine there was no duty on the part of the master to inspect the tool in question, and he, therefore, would not be liable for an injury resulting from a defect therein.

Where, on a state of facts, reasonable minds might differ as to whether or not there was negligence from which injury and damages flowed directly and proximately, the determination of the question is one for the jury, and its determination thereof, if reasonably supported by any competent evidence, is binding on appeal. Reasonable inferences that may be drawn from the testimony are within the purview of this general principle. From my statement of the state of proof in this case hereinafter set forth, it is obvious that it might be reasonably determined that the injury suffered in this case and the damages found by the jury to have resulted therefrom were the direct and proximate result of the defective condition of the tool in question. Observe in this connection that the tool complained of was simple, though the defect is alleged to have been latent in character; that the sledge used was iron and weighed eight pounds; that it struck the deceased a glancing blow; that there was a short-age of tools; that the master's attention was called to the tool under circumstances from which it might be reasonably inferred that the master's attention was directly called to the particular defect in question. The foreman testified that he checked the tools from time to time and had examined them more than once. One witness testified that the foreman told the employee who called his attention to the tool used in this instance to go ahead and use it. There is positive evidence that the tool broke and the sledge thereof hit the deceased on the head. Medical testimony was introduced showing the condition of the decedent for a long time prior to his death and attributes such condition and his actual death to the blow on his head. To take such state of facts away from the jury would be to substitute the opinion of the judge for that of a jury.

I cannot say that reasonable minds might not differ in the determination of whether the injury complained of was the direct and proximate result of the negligence of the master under the state of facts proved by the plaintiff; this state of facts was entirely sufficient for the submission of this case to the jury.

I now come to a consideration of the applicability and effect of the simple tool doctrine. The tool used in this instance was a simple tool; it is not necessary herein, as I view it, to determine whether or not a latent defect in a simple tool takes it out of such category or whether or not the general rule applicable to simple tools applies to latent defects.

Masters are not required to inspect simple tools for the reasons that defects in simple tools are ordinarily occasioned by usual wear and tear and therefore obvious, and the further fact that employees have as much knowledge about simple tools as the master and would have a better opportunity of observing defects therein. There being no duty ordinarily on the part of the master to inspect simple tools, negligence cannot be predicated upon the existence of a defect therein unknown to the master.

St. Louis & S. F. R. Co. v. Mayne, 36 Okla. 48, 127 P. 474, 42 L. R. A. (N. S.) 645; Chicago, R. I. & P. R. Co. v. Lillard, 42 Okla. 109, 141 P. 8; Woodruff v. Phillips, 138 Okla. 77, 280 P. 449; Barnsdall Oil Co. v. Ohler, 48 Okla. 651, 150 P. 98, and the other cases to the same effect. However, negligence herein is not predicated upon the failure of the master to inspect the tool in question, nor is it charged that the master should be held to account for knowledge of its defects that would have been disclosed by proper inspection. Negligence is herein predicated upon the proposition that the master did inspect the tool used; and that the circumstances reasonably indicate that the defect was called to the master's attention and he had actual knowledge of the defect, and in this connection the further contention is made, and negligence predicated upon the alleged fact, that the master, when he undertook to and did inspect the tool in question, had the duty to make a reasonable inspection thereof and would be charged with knowledge of such defects therein as would ordinarily be gained from an adequate inspection. Many witnesses testified in the case and the evidence is voluminous. In behalf of the plaintiff it may fairly be said that the evidence shows that the sledge hammer used was old and defective, in that there was dry rot in the handle around the eye of the sledge; that while being used by another employee it broke, striking decedent a glancing blow on the head; that before the blow was struck that injured the decedent, an employee who was "afraid" of this particular sledge handed it to the foreman; some conversation took place between the employee and the foreman; the sledge was handed back by the foreman to the employee with the instruction "Oh, go ahead—it will be all right"; that the injury to the plaintiff eventually produced his death together with a lot of pain and suffering. There is no evidence that the decedent was or was not in hearing distance of the conversation which took place between the other employee and the foreman concerning said sledge hammer. The evidence on the part of the defendant is in direct conflict with much of the evidence on the part of the plaintiff in the foregoing respects.

Plaintiff proceeds on the theory that this state of facts, though circumstantial in some respects, shows that the foreman had actual knowledge of the defect and directed the co-employee of the decedent to use it notwithstanding the defect, and that the decedent had no knowledge of the conversation between the other employee and the foreman or knowledge of the inspection by the foreman and did not himself have actual knowledge of the defect. There is no contention that circumstantial evidence is not competent to establish a necessary fact in a civil action. The jury in making its determination of the questions in issue considered all of the direct evidence, and no doubt indulged all of the reasonable inferences to be drawn from all the facts and circumstances proven.

While an employer is not required to make ample periodic inspection of simple tools used in his business in order to discover obvious defects therein, he is guilty of negligence if he does inspect a tool and by reason of such inspection knows a defect exists and directs the continued use thereof.

In Ft. Smith & W. R. Co. v. Holcombe, 59 Okla. 54, 158 P. 633, we said:

"There is, however, this exception to the rule: That the master is not liable for injuries from the use of simple tools selected with ordinary care. When a simple tool becomes defective, and the master has actual notice of such defect, and the servant injured has no knowledge of the defect, the master is liable for exposing the servant to a peril unknown to him and must respond in damages."

See, also, in this connection St. Louis & S. F. Ry. Co. v. Sears, 173 Okla. 483, 49 P. 2d 489.

The jury in its determination in the instant case, based upon direct and circumstantial evidence introduced, reasonably found all the facts disclosed in

694

the case supra. There is, therefore, no essential difference in the case at bar and the case supra. The contention of the defendant that there is a material distinction is without merit. The defendant contends in this connection that under the rule of the foregoing case it would be necessary in the instant case for the jury to find that the foreman actually knew of the defect, but notwithstanding this fact instructed the employee to continue its use. Such findings are necessarily inherent in the verdict of the jury in the instant case and its conclusion thereon is binding on us, though the evidence on practically all material issues in this case is in sharp conflict.