McCRACKEN v. FRANCO-DOMINION DEVELOPMENT CORP. et al.

No. 30010.   Sept. 23, 1941.

*117 P. 2d 135.*

O. A. Cargill, Howard K. Berry, and O. A. Cargill, Jr., all of Oklahoma City, for plaintiff in error.

Rainey, Flynn, Green & Anderson and Thomas W. Caffey, all of Oklahoma City, for defendants in error.

BAYLESS, J. Vinnie McCracken, a widow representing herself and her children, appeals from the judgment of the district court of Oklahoma county sustaining the demurrer to her evidence of Franco-Dominion Development Corporation, a corporation.

R. C. McCracken was killed while in the course of his employment by the company. A crew of which he was a member was engaged in pulling the rods from a well belonging to company. McCracken was standing by the hole, and was acting as rod wrencher—that is, breaking or uncoupling the rod sections as they were lifted to within his reach. An elevator was attached to the upper end of the rod section at the derrick floor. This elevator had an "ear" which could be inserted in a hook; and a cable attached to the hook was pulled upward through the crown block through a pulley and then downward and wound on a bull wheel, and by this means the rods were lifted from the well and elevated to the point where McCracken could break them. On the day in question, when the crew went to work, the hook was secured to some part of the equipment, and the trigger was sprung releasing it. No evidence disclosed any observable defect. The hook was then attached to the ear of the elevator as indicated, and they had been raised and lowered nine times in the usual and ordinary manner, when the safety latch in the hook released itself and allowed the elevator to fall and strike McCracken. The hook being used was one of standard manufacture and customary use in the oil fields. We quote testimony relating to it:

"A. It has the main body; safety latch; handle; Trunion and bail; bearing left spring; bolts; pins; ring pins; handle pins; coil spring; and, of course, some pins and cotter pins go to make up the

entire hook. Q. Explain how the safety latch operated. A. The safety latch in the hook is triangular shape, as you will see across the mouth of the hook, and works on a lever mechanism that automatically latches itself when the weight is put on at this place and after it is put on it is locked in such a manner that the only way it can be opened is by direct pressure on this handle within this eye, right back here. Q. What locks it in its proper position? A. It has a pin that fastens itself at a cross back here. Q. On the inside of the hook? A. On the inside, here. Q. What operates it? A. You mean when it locks or unlocks? Q. What causes it to keep it locked? A. This lever device here that works when you push down here. Q. There is another spring in here? A. No springs in the body of the hook, only in the handle and neck. Q. What do you mean, handle? A. This piece back here. Q. This is the lever spring? A. That is it, right in the trigger."

No one saw what happened at the instant the hook released the elevator, and the cause of this release is one of surmise (from an examination of the hook later) that it was unsafe.

The general rule is that negligence, that is, the violation by the master of the duty to furnish the employee a safe tool, may not be inferred from the happening of an accident from the failure of the tool to work in a given instance. Some act or failure to act must be shown in connection therewith.

Plaintiff contends that the master owes the duty to furnish the employee with safe tools with which to work, that this is a continuing duty, and especially is this true with respect to a complicated tool that is in daily use.

There are two aspects of this issue of fact from the evidence before us. First: Daniels, the vice-president of company and a codefendant and a brother-in-law of McCracken, testified that the hook had been used that day to the extent above mentioned, and he watched the examination of the hook after the accident and after it had been to the shop and said, "and it didn't work." He testified that the hook had been in use for some time, that it was an old hook, that it was a secondhand hook. He further testified the springs in the hook were weaker than those in a new hook. He also testified in response to this question, "You know that elevator fell?" "Yes, and that is all I know, I don't know what caused it." This witness and others testified that tools used in this work tended to become covered with a coating of paraffin from the oil and this impeded their efficiency. There was testimony that after the accident an inspection disclosed that this hook was befouled in this manner, and that such a condition could be remedied easily by dipping in distillate.

The evidence discloses that Daniels, the foreman, was the party who last cleaned the hook. There is no evidence that deceased knew of the fouled condition of the hook and elevator or that he knew who was charged with the duty of cleaning it. He was only a temporary employee. The evidence discloses that this hook and elevator were raised and lowered in his presence, but we do not understand that his duty required him to use any part of these instruments, but, on the contrary, his work consisted of breaking the rods. The evidence discloses that the elevator man, another employee, was charged with the duty of working with the elevator and hook.

Each incident presents its own peculiar problems. We are of the opinion that the evidence introduced did not clearly indicate that the hook was defective in the sense that it lacked some essential feature, or was not suited to the work for which it was being used. There is, however, some proof of deterioration based upon the fact it was a used tool when purchased and the springs thereof were weaker than a new tool.

There is also proof that tools used in work around the wells in this field tended to become coated with paraffin, and that it is customary to keep handy distillate to treat tools of this character when required. There is proof that this hook had been cleaned about 30 days before, and that an inspection of the hook soon after the accident disclosed

it was befouled with paraffin and would not work properly, but after it was put into a container of distillate and cleaned, it worked. There is proof that defendant had distillate on hand for the use of the workmen to treat the tools.

Plaintiff argues, and there is proof to support the contention, that McCracken was an extra or intermittent employee, that he was a subordinate and under the control of defendant's foreman, that he was so stationed at his work and the nature thereof did not bring him into contact with the hook, and as a consequence he had no opportunity of inspection nor responsibility therefor.

From all of this plaintiff argues there was sufficient evidence to justify submitting the issues to the jury, and by reason thereof the trial court erred in sustaining the demurrer to the evidence.

Defendant argues (1) that there is no evidence of the failure on its part to discharge the duty it owed to McCracken; and (2) that this was a temporary condition in a simple tool that did not require the help of skilled mechanics to discover or repair and was of such a character as workmen themselves discover and remedy. In support thereof defendant cites and relies on Grand v. St. Louis-S. F. Ry. Co., 97 Okla. 111, 221 P. 80; Oklahoma Portland Cement Co. v. Shepherd, 47 Okla. 258, 147 P. 1031, and other authorities to the effect contended.

We are of the opinion that there is sufficient evidence in the record of the failure on the part of either the master or the employees to observe the fouled condition of the hook and elevator and to take steps to remedy the situation. In our opinion, if the jury should find from such evidence that the failure to observe the condition of this hook and to remedy the same amounted to failure on the part of the master to furnish safe tools and a safe place to work for his employees, that its verdict would have to be sustained; unless the master is correct in its legal contention that this failure on its part did not amount to a breach of the duty it owed to its em-

ployees, including the deceased, by reason of the fact that the hook and elevator constituted a simple tool, and, therefore, placed a greater burden of observation and duty to remedy the condition upon the employee than on the master.

There is an abundance of authority on the question of what is a simple tool (35 Am. Jur. 573, § 143, and the annotations thereunder). We have spoken of the diversity of views thereon (St. L. & S. F. Ry. Co. v. Mayne, 36 Okla. 48, 127 P. 474). A reading of the many cases reported does not disclose a single instance where a tool or device as heavy, as intricate in its design, and as delicate in some respects and as rugged in other respects in its operation, as this hook and elevator has been held to be a simple tool, and therefore we cannot hold this tool to be a simple tool.

In addition to this, it is our understanding of the rule of law relating to simple tools that the duty imposed upon the particular employee to observe and keep in proper condition the particular simple tool with which he works applies only to the tools with which he works directly. That is to say, the devices which are intrusted to him by the master for the purpose of performing the particular duty assigned to him, and that he has no such responsibility with respect to the other tools and devices furnished by the master in connection with the work being done which are used by other employees. Under the state of the record before us, even if we had held these devices to be simple tools, the evidence clearly discloses the state of fact that imposed no duty or responsibility upon the deceased with respect to the hook and elevator.

Upon consideration of the record and contentions of the parties, we are of the opinion that the evidence introduced by the plaintiff was sufficient to make a prima facie case, and to require submitting the issues of fact to the jury, and for this reason the action of the trial judge in sustaining the demurrer to plaintiff's evidence was erroneous.

Judgment reversed and cause remanded for further proceedings.

CORN, V. C. J., and OSBORN, HURST, DAVISON, and ARNOLD, JJ., concur. GIBSON, J., dissents. WELCH, C. J., and RILEY, J., absent.