OKMULGEE SUPPLY CORP. v. McFARLAND, Adm'x.

No. 29829.   Jan. 20, 1942.

Rehearing Denied May 19, 1942.

*125 P. 2d 972.*

A. N. Boatman, of Okmulgee, and Hudson & Hudson, of Tulsa, for plaintiff in error.

George F. Short, Welcome D. Pierson, Max G. Morgan, and John F. Reed, all of Oklahoma City, for defendant in error.

CORN, V. C. J.   This suit was brought in the superior court of Okmulgee county, Henryetta division, by defendant in error, plaintiff below, Dollie Ethel McFarland, as administratrix of the estate of Frank Vance McFarland, deceased, to recover judgment for the wrongful death of her decedent, Frank Vance McFarland, against the Okmulgee Supply Corporation. The trial of the case resulted in a verdict in favor of the plaintiff in the sum of $5,000 against the Okmulgee Supply Corporation. Hereafter we shall refer to the parties as they appeared in the trial court.

Mr. McFarland had been connected with this company as general superintendent for some time, and had worked for the company for about six years in all. In July, 1938, Mr. Roberts, secretary of the company, and Mr. McFarland made a trip to Seminole, or at least to a point in the Seminole oil field. During this trip they called at a place where a cooling or air-conditioning system was in operation. Some conversation was had concerning this air-conditioning unit, and while in the automobile traveling back to Okmulgee McFarland informed Mr. Roberts that he believed he could design an efficient air-conditioning unit for the company office. Roberts stated to him, in substance, that he was at liberty to commence construction of such a unit at any time he so desired.

Soon after this conversation McFarland commenced the assembling of equipment, looking towards the construction of an air-conditioning unit as above referred to. The evidence further shows that McFarland was in exclusive charge of this work, and shopped about, buying the various pieces of equipment necessary to complete his task, and was informed where a certain used pump could be bought. He got in touch with the owner of this pump and entered into negotiations with him, looking towards the purchase, and arranged with the owner to go with him to the cistern

where the pump was located, for the purpose of inspecting it.

The pump was at the bottom of the cistern, which was some 15 feet in depth and about three feet in diameter. They went down into the bottom of the cistern to inspect the pump, and while in the cistern McFarland detected the odor of gas of some character. Upon his return to the company he talked with an inferior servant by the name of Redpath, and told him about locating the pump and also told him of the odor he had detected while at the bottom of the cistern. Redpath stated to him that in his judgment the gas was what is generally known as black damp, and told McFarland how to test the gas with an open flame. Redpath was an inferior servant who had been employed and directed in the details of his work by McFarland.

After this conversation with Redpath, in which presence of the gas was discussed, McFarland took an employee by the name of Pinkerton, who was inferior to him in rank, to the cistern in order to remove the pump. McFarland was the only person connected with the corporation who knew of the location of the pump, and was the one who directed that the pump be removed. He descended a ladder into the cistern, striking matches on his way down. After he had descended the ladder a few feet he struck a match and dropped it into the bottom of the cistern. An explosion and fire followed, which resulted in the injuries producing McFarland's death.

The defendant contends:

"The court erred in overruling the defendant's demurrer to the plaintiff's evidence, for the reason: (a) Plaintiff introduced no proof of violation of any duty owed by the defendant to the deceased. (b) Plaintiff's evidence showed that the defendant did not furnish to the deceased his place of work or prescribe his methods of work. (c) Plaintiff did not make a prima facie case of negligence against the defendant corporation by the introduction into evidence of the statements attributed to Mr. Colchensky by Mrs. McFarland, because said evidence was wholly incompetent, irrelevant and immaterial."

The plaintiff's theory of the case is that the defendant furnished to the deceased an unsafe place in which to work, and prescribed his method of work.

In Woelflen v. Lewiston-Clarkston Co., 49 Wash. 405, 95 P. 493, paragraphs 4 and 5 of the syllabus are as follows:

"While the master must provide a reasonably safe working place for his servants, where the master is a corporation, this duty must be performed by others, who become vice-principals, and where a master, whether a corporation or otherwise, authorizes its superintendent to supervise work, it becomes the latter's duty to perform those duties which the law imposes upon the master.

"A servant cannot recover for injuries received because of the dangerous condition of a working place, where such condition was well known to him, or where it was his duty to ascertain the condition of the place, which he neglected to do."

The master in this case delegated to McFarland, as its superintendent, the duty of constructing the air-conditioning unit, and in the construction of this unit McFarland deemed it necessary to purchase a pump, and negotiated for the pump located in this cistern, and chose the methods adopted in the procedure of bringing the pump to the surface of the ground, free from any directions of said defendant.

The trial court, over the objection of the defendant, permitted plaintiff to testify as to a conversation she had with one Colchensky, vice president of the company, a few days after the accident. This conversation was to the effect that upon his return from out of town, subsequent to the accident, someone at the office told him instructions were given to Mr. McFarland as to how to get the pump out of the well and to strike matches to see if it was safe to go into the well. This evidence, plaintiff contends, is sufficient to make out a prima facie case.

The admissions, or statements, of Colchensky made to Mrs. McFarland,

according to her testimony, were not a part of the res gestae for the reason that none of such statements were contemporaneous with the transaction, or induced by the happening of the event in question, but such statements were merely narrative statements of what had occurred, that is, a past event.

In one of the earlier cases on this point, Gillespie v. First National Bank of Kingfisher, 20 Okla. 768, 95 P. 220, this court stated the rule as follows:

"Declarations and admissions of the officers and agents of a corporation may be proved against the corporation as part of the res gestae when the same are made during the agency of such officer or agent making such declarations or admissions, and when the same are in regard to a transaction depending at the very time, but they cannot be admitted if made as a narrative of a past act subsequent to the transaction."

In Maston v. Glen Lumber Co., 65 Okla. 80, 163 P. 128, we held:

"The admissions and declarations, in order to be received as evidence against the corporation, must not relate to past events; they must have been made in the course of the transaction, so as to constitute a part of the res gestae."

Both of the above-quoted cases were cited with approval in the case of Russell Products Co. v. Bailey, 162 Okla. 212, 19 P. 2d 601. That the same question was involved in that case as in the case at bar may be seen from the first paragraph of the syllabus, which is as follows:

"Declarations and admissions of the officers and agents of a corporation may be proved against the corporation as part of the res gestae when the same are made during the agency of such officer or agent making such declarations or admissions, and when the same are in regard to a transaction depending at the very time, but they cannot be admitted if made as a narrative of a past act subsequent to the transaction."

The statements made by Colchensky were also hearsay, as the plaintiff admits that Colchensky was only repeating to her something he had heard someone else say.

There being no competent evidence to support the verdict of the jury, the cause is reversed.

WELCH, C. J., and OSBORN, BAYLESS, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY, J., absent.