NELSON, Adm'x, v. WASTEKA OIL CO. et al.

No. 30933. Jan. 23, 1945.

Rehearing Denied Feb. 5, 1946.

*165 P. 2d 637.*

O. A. Cargill, Howard K. Berry, and O. A. Cargill, Jr., all of Oklahoma City, for plaintiff in error.

George F. Short, Welcome D. Pierson, George E. Fisher, and John F. Reed, all of Oklahoma City, for defendants in error.

PER CURIAM. This action was commenced against Wasteka Oil Company, a corporation, and Ray Stephens, Inc., a corporation, by Vyvyen Nelson, administratrix of the estate of Kenneth Nelson, deceased, to recover damages for the wrongful death of Kenneth Nelson, who was blown from the floor of an oil derrick. The parties will be referred to by their trial court designation.

The record discloses that decedent was, at least for a majority of the time during the drilling of the Farwell Well No. 2, in charge of the drilling crew; that there was a driller or a drilling superintendent who supervised the drilling but was generally not present except on occasions when he came to the location, watched its operation and made suggestions to the decedent about the operation of the well. Decedent was described as a tool pusher, and when the driller was not present he was in charge of the crew. Farwell Well No. 2 had been brought to the sand. It had never been produced. On the date of the accident, towit, May 26, 1939, it was determined that a length of tubing should be raised to facilitate the production, or the bringing in of the well. The well and its premises was equipped with a cellar which was some 7 or 8 feet below the surface of the floor of the derrick. In this cellar were mechanical devices for the control of a well where rock pressure is encountered during the drilling process. This particular well was equipped with a Hinderliter head. This Hinderliter head consists of an H-beam which fits over a contraption which acts as a cap which sets on rubber bases. This H-beam in turn is wired by steel cables and according to the testimony of witnesses can be affixed either to the surface casing or to the cement floor of the cellar. In the case at bar it was affixed by two bolts set in the cement of the floor of the cellar. These bolts are called eyebolts. The cables leading from the

eyebolts to the H-beam are referred to as tie-downs. After the length of the tubing had been raised from the bottom of the well the crew began to close the valve of the Hinderliter. At approximately the time the valve of the Hinderliter was closed, the well "blew wild," and it was this blowing wild of the well which threw the decedent from the floor of the derrick causing an injury from which he later died. The only question presented is whether, under any theory of the plaintiff, there is competent evidence reasonably tending to prove that the proximate cause of the death of the decedent was the failure to furnish safe tools and equipment or the failure to furnish a safe place to work. At the conclusion of the evidence offered by the plaintiff the defendants demurred to the evidence and the demurrer was sustained and judgment entered for the defendants. We have repeatedly held that it is the duty of the master to furnish a safe place to the workmen. Thurlow v. Failing, 133 Okla. 277, 272 P. 368; Cities Service Oil Co. v. Jamison, 189 Okla. 445, 117 P. 2d 776; McCracken v. Franco-Dominion Development Corporation, 189 Okla. 354, 117 P. 2d 135. Where competent evidence is introduced from which reasonable men might draw different conclusions as to whether there is negligence, the question is one of fact for the jury. Oklahoma Gas & Electric Co. v. Oliphant, 172 Okla. 635, 45 P. 2d 1077; St. Louis-San Francisco R. Co. v. Starkweather, 148 Okla. 94, 297 P. 815; Cherry v. Arnwine, 126 Okla. 287, 259 P. 233.

The cellar in question was built by the defendants and its construction was supervised by competent engineers whose duty it was to construct the cellar in such a way that it would hold the escaping gas due to the rock pressure. Complicated equipment for the suppression of rock pressure was provided. Its provision and erection was not made under the direction of the decedent. There is evidence in the record reasonably tending to disclose that it was due to a failure properly to maintain the necessary equipment for the holding in place of the Hinderliter head that the accident occurred which caused the death of the decedent. One witness testified that in his opinion the Hinderliter head was improperly secured to the floor of the cellar; that it lacked the necessary and proper number of eyebolts and tie-downs; that it should have been secured to the surface casing. There is also evidence that the Hinderliter head was secondhand.

Defendants cite and rely upon the following cases: City of Edmond v. Washam, 190 Okla. 140, 121 P. 2d 300; Kill v. Summitt Drilling Co., 153 Okla. 197, 5 P. 2d 346; Nelson v. Wolverine Petroleum Corporation, 189 Okla. 351, 117 P. 2d 787; Leierer v. Thompson, 190 Okla. 233, 122 P. 2d 387; Oklahoma Pipe Line Co. v. Fallin, 176 Okla. 474, 56 P. 2d 372; Oklahoma Pipe Line Co. v. Perrymore, 190 Okla. 687, 126 P. 2d 518; Williman v. City of Fairview, 157 Okla. 239, 11 P. 2d 453, and Okmulgee Supply Co. v. McFarland, 190 Okla. 581, 125 P. 2d 972. There are other cases cited in the brief, but these are the principal cases relied upon by the defendants. Since defendants rely upon Nelson v. Wolverine Petroleum Corp., supra, and italicize a part of the principle therein announced, we think it appropriate to distinguish between that case and the case at bar. It was assumed in that opinion that the death of decedent was occasioned by the collapse of a ladder in the bottom of a tank. It is stated therein that a common ladder belongs in that class of implements the character and use of which are understood by all ordinary men alike. Contrast that fact situation with the one in the case at bar where the cellar and the appliances are constructed to control the rock pressure of wells dug to a depth. Experts are still working on the necessary process to control such enterprises and the dangers incident thereto. In the case at bar the testimony is in irreconcilable conflict as to the correct methods to control "wild wells" or bring in wells subject to high rock pressure.

Defendants cite and rely on Kill v. Summitt Drilling Co., supra, as being

directly in point. They also cite and quote from City of Edmond v. Washam, supra. In the latter case a superintendent was hired by the city of Edmond to supervise, reconstruct when necessary and control the instrument which was the cause of his death. This court held there was no liability because the decedent was a vice principal in charge of the instrument which caused his death. In Kill v. Summitt Drilling Co., supra, though the court did not use the words vice principal, it apparently places the decedent therein within the principle applicable to the relationship of master and servant analyzed and commented upon in City of Edmond v. Washam, supra. However, the discussion in Kill v. Summitt Drilling Co., supra, indicates that liability of the master was denied on the ground that the servant was negligent. If the fact situation in Kill v. Summitt Drilling Co., supra, is similar to the case at bar, we decline to hold that it is controlling in determining that the decedent in the case at bar was a vice principal in the sense used in City of Edmond v. Washam, supra.

In our opinion, what has been said above distinguishes the case at bar from City of Edmond v. Washam, supra, and Kill v. Summitt Drilling Co., supra. We are convinced that there is competent evidence reasonably tending to support the theory of the plaintiff that the defendants were negligent in failing to furnish a safe place in which to work and safe appliances with which to work, and that this question of fact should have been submitted to the jury.

The cause is reversed and remanded, with directions to the trial court to proceed in accordance with the views herein expressed.

GIBSON, C. J., HURST, V.C. J., and OSBORN, BAYLESS, WELCH, CORN, and DAVISON, JJ., concur.