TWEED v. FIRST NATIONAL
BLDG. CORP. et al.

No. 33560.   May 2, 1950.

*218 P. 2d 356.*

Hatcher & Hatcher and Baxter Taylor, all of Oklahoma City, for plaintiff in error.

Monnet, Hayes & Brown, of Oklahoma City, for defendant in error First National Building, a Corporation.

Rainey, Flynn, Green & Anderson, of Oklahoma City, for defendant in error F. E. Reid.

WELCH, J.  Donald C. Tweed brought this action against the First National Building Corporation, a corporation, and F. E. Reid, an individual, seeking damages for personal injuries sustained by the plaintiff when he fell down a flight of stairs between the 29th and 30th floors of the First National Building in Oklahoma City, Oklahoma. The plaintiff alleged negligence in the failure of defendants to maintain the stairway in a safe condition.

The First National Building Corporation is the owner of the First National Building. It leased the entire 30th floor of the building to F. E. Reid who there operated a public dining and entertainment establishment known as the Rainbow Room.

Plaintiff gave testimony of attendance at a party held in the Rainbow Room and of his departure therefrom;

that he started toward the elevator entrance on the 30th floor and observed that the elevator was not running, and then went to the stairway leading to the 29th floor in company with several persons. Persons were in front of him and behind him. Concerning his further movements he stated:

"I walked on through the hallway and started down the steps, and about the second or third step, somewhere there, and I wouldn't say for sure just exactly which one, I slipped and lost my balance, and grabbed for the railing, and I didn't get it; and I fell head-first right down the steps. . . ."

A witness called by the plaintiff testified that between 12:30 and 1:00 o'clock on the night of the party, he and others, including the plaintiff, had started down the stairway. The witness stated:

"I had taken, possibly a third step when I felt some force hit my left shoulder, and I grabbed for whoever it was, and it seemed to be coming with such force I couldn't stop them; well, I later learned it was Mr. Tweed and I held onto his arm for possibly a couple of steps, when I lost my balance and momentarily I released my hold on him, but he went on to the bottom, as I learned."

Another witness called by the plaintiff testified that he was behind plaintiff as the party descended the stairs and saw plaintiff fall.

Two witnesses testified concerning an experience on the stairway prior to the plaintiff's accident, "at round 12:00 or between 11:45 and 12:00." Concerning the stairway at such time, one of the witnesses stated that there was something on the steps about the second or third step. As of the same time and occasion the other witness stated:

"Well, about the steps going down, there was something scattered on the steps, I couldn't tell whether it had been dropped, or someone had become ill, so I held on the steps, the railing, and for fear of falling; and then, when I came back I did the same thing,

and as I went around the elevator or around to the, or going back to the party, there was a colored porter there, and I told him that he should mop those steps or have it done, on account of someone might hurt themselves."

At the conclusion of all the testimony and evidence offered by the plaintiff, the trial court sustained demurrers to the evidence and judgment was entered that plaintiff take nothing.

The plaintiff contends the evidence was sufficient to establish a prima facie case of negligence and that the case should have been submitted to the jury.

The fact that plaintiff slipped and fell on the stairway and that a foreign substance was seen on the steps some 30 minutes before plaintiff's fall are the principal circumstances in proof relied on to establish negligence, and that the negligence caused injury. There is no more than an inference that plaintiff's fall commenced at or about the place on the stairs where the witness had formerly noticed some foreign substance.

Plaintiff directs attention to the rule stated in the syllabus of Covington Coal Products Co. et al. v. Stogner, 181 Okla. 35, 72 P. 2d 491:

"In a civil action for damages for personal injuries all the plaintiff is required to do in order to establish his case is to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause, and this fact may be established by circumstantial evidence and the reasonable inference that may be drawn therefrom."

The cited rule presupposes the fact of negligence.

It is noted that the persons accompanying or immediately preceding or following the plaintiff on the stairway gave no testimony concerning the condition of the steps. The mere fact that plaintiff slipped and fell, in the absence of evidence showing an unsafe condition of the stairway at the time and

place, raises no presumption of negligence on the part of the owner or lessee of the premises. Persons may slip and fall on stairways from various causes, known or unknown, and the defendants may or may not have cleaned the stairway. The doctrine of res ipsa loquitur which is only applicable when the thing shown speaks of the negligence, not merely of the happening of the accident, does not apply.

The fact that a foreign substance was at some place on the stairway some 30 minutes before plaintiff's use of the stairway, and the fact that the plaintiff slipped and fell on the stairway, are circumstances of proper consideration as applies to the question of whether an unsafe condition of the stairway was allowed to exist or did exist at the time the plaintiff used the stairway, and whether such condition was the cause of the plaintiff's injury, but there is not such connection here between these evidentiary facts as would permit a court or jury to properly decide these questions in the affirmative.

In Lowden v. Friddle, 189 Okla. 415, 117 P. 2d 533, the court said:

"As pointed out by this court in Gypsy Oil Co. v. Ginn, 152 Okla. 30, 3 P. 2d 714, in discussing inferences of negligence or causal connection, an inference of negligence or causal connection must be based on something more than mere speculation or conjecture, that it is not sufficient to show a state of circumstances consistent with or indicating a mere possibility and to leave other possibilities of equal force and reason. The theory to be adopted must be the more probable and more reasonable to be adopted from the evidence. The theory cannot itself furnish the element that is missing in the evidence. The theory must be applied to evidence."

Obviously, herein, the presence of foreign matter on the steps at the time of their use by the plaintiff is an evidentiary fact essential to a finding of negligence and that the negligence caused injury. There was no direct evidence to establish this fact. If it may be inferred from the circumstances in proof that the steps were slick, then to find a causal relation with plaintiff's injury this inference of fact must be made the basis of a further inference. An inference drawn from circumstances in proof may not in itself be treated as a circumstance in proof as a basis of a further inference. To add an inference to an inference to arrive at a conclusion is to depart from the evidence and reach into the field of speculation and conjecture.

In the case of Schaff v. Ferry, 105 Okla. 259, 232 P. 407, it is said:

"It is competent to prove negligence as any other fact, by circumstantial evidence, but in such case, the circumstances must be such as reasonably to lead up to and establish the fact sought to be proved. M. K. & T. Ry. Co. v. Greenwood (Tex. Civ. App) 89 S. W. 810. It is elementary law that an inference of fact cannot be based on another inference; that a presumption cannot be based on another presumption. No inference of fact or of law is reliable that is drawn from premises which are uncertain. Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved and not themselves presumed. As stated in U. S. v. Ross, 92 U. S. 281, 23 L. Ed. 707 (quoting from Starkie on Ev. p. 80):

" 'In the first place, as the very foundation of indirect evidence is the establishment of one or more facts from which the inference is sought to be made, the law requires that the latter should be established by direct evidence as if they were the very facts in this issue.' "

It is also there said:

" 'The law requires an open, visible connection between the principal and evidentiary facts and the deductions from them, and does not permit a decision to be made on remote inferences. Best on Ev. 95. A presumption which the jury is to make is not a circumstance in proof; and it is not, therefore, a legitimate foundation for a presumption.' "

Under the testimony in this case, only by conjecture and speculation could a conclusion be reached that the stairs were unsafe at the time of their use by the defendant and at the place of his fall, or that any act or failure of defendants to act was the proximate cause of plaintiff's injuries.

Evidence of the facts which constitute acts of negligence and that such negligence resulted in injury to the plaintiff is essential to a recovery by the plaintiff. There being no such evidence, the trial court properly sustained the demurrers.

The judgment is affirmed.

DAVISON, C. J., and CORN, GIBSON, LUTTRELL, JOHNSON, and O'NEAL, JJ., concur. HALLEY, J., concurs in part and dissents in part.

HALLEY, J. (concurring in part and dissenting in part). I concur in the majority opinion insofar as it sustains the demurrer to the evidence on behalf of the First National Building Corporation. I dissent from its so doing as to the defendant F. E. Reid, the owner and operator of the Rainbow Room.

In my opinion, the writer of the majority opinion has overlooked important evidence in this case, and also has disregarded a previous decision of this court on a similar state of facts. The Rainbow Room is situated in the heart of Oklahoma City, at the top of the First National Building, and it is uncontroverted that it holds itself out for the purpose of furnishing food to its customers, and also furnishes setups for drinks and has a place where its patrons may dance. On this particular evening on which the plaintiff was injured, the employees who worked in the same department with him at Tinker Field were having an office party, and forty or fifty of his friends were in attendance at this party on that particular night. It is understood that they went there to enjoy themselves and have a good time. The customers were transported to the 30th floor by elevators. After 12:30, the elevators did not go to the 30th floor, and the customers had to go down to the 29th floor to get on the elevator. On this particular evening, about 12 o'clock two ladies who were in the party with the plaintiff had occasion to go to the ladies' rest room, located on the landing between the 30th and the 29th floors, and when they started down the stairway they found a slippery substance, undoubtedly vomit, on the steps. I quote from the evidence of the witness Julia Welch:

"Well, about the steps going down, there was something scattered on the steps, I couldn't tell whether it had been dropped, or someone had become ill, so I held on to the steps, the railing, and for fear of falling, and then when I came back, I did the same thing, and as I went around the elevator, or around to the,—and going back to the party, there was a colored porter there, and I told him that he should mop those steps or have it done, on account of someone might hurt themselves."

I also set out the evidence on this point of Mrs. Anita McDermott:

"When I started down the steps, I noticed that there was something on the steps about the second or third step, and I made the remark to Mrs. Welch,—(interrupted). Mr. Brown: Object to the remark as hearsay. The Court: Yes; sustained. Q. You did observe something on the steps? A. Yes; I did. Q. And you went on down? A. I went on down, I held to the handle. Q. Now, at about what time would you say that was? A. That was about a quarter to twelve; well, between a quarter to twelve and twelve o'clock."

The testimony of the plaintiff showed that when he left at about 12:30 there was a sign directing people to go down the stairway to the 29th floor, and that when he reached about the second or third step, he slipped and lost his balance and fell head-first down the stairway. The witness Harry Johnson testified that he had taken possibly three step down the stairs when the plaintiff, who was directly behind him, struck his left shoulder, and that the witness attempted to arrest the plain-

tiff's fall but was unable to do so. In my opinion, the evidence is sufficiently definite to establish the fact that the plaintiff fell at the very spot on the steps where the two lady witnesses testified there was a slippery substance not more than 45 minutes before. It would be reasonable for a jury to infer that the slippery condition existing 45 minutes before continued up to the time that the plaintiff fell.

The facts in this case are just as strong as the facts in S. H. Kress & Co. v. Maddox, 201 Okla. 190, 203 P. 2d 706, decided March 8, 1949, where a verdict was permitted to stand against Kress & Co. for injuries sustained in a fall upon the floor of a retail store in Ardmore. In that case, the evidence of the previous condition of the floor was by a Mr. and Mrs. Henry, who testified that they were in the store during the latter part of August and that the floor was heavily oiled, in fact, covered with oil, and there were puddles of oil on the floor; that a Negro boy was spreading the oil out with a kind of apparatus; that on the same day, and not more than an hour after they were in the store, they heard that someone had fallen therein, and that the newspaper, Ardmoreite, of that evening or the following evening, disclosed that Mrs. Maddox was the one who fell. The court made this statement:

"By reason of its nature, the condition testified to was admissible as tending to show the condition existing at the time of the fall, and the weight thereof was a question for the jury to be considered along with the other evidence pertinent thereto."

I do not believe there is anything to distinguish that case from the one at bar, and certainly, if that case was permitted to go to the jury, the case at bar should be. This court has been liberal in permitting cases to go to the jury on similar injuries in business establishments. I call attention to Owen v. Kitterman, 178 Okla. 483, 62 P. 2d 1193; Halliburton-Abbott Co. v. Granberry, 179 Okla. 522, 66 P. 2d 505;

Safeway Stores v. Whitehead, 190 Okla. 464, 125 P. 2d 194.

It has long been the rule in this state that a demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all inferences and conclusions which may be reasonably and logically drawn therefrom, and it is error to sustain such a demurrer unless there is an entire absence of proof tending to show a right to recover. See Davis v. Curry, 192 Okla. 32, 133 P. 2d 186; Criterion Theatre Corp. v. Starns, 194 Okla. 624, 154 P. 2d 92; Nelson, Adm'r, v. Wasteka Oil Co., 196 Okla. 439, 165 P. 2d 637; Adams v. Stanolind Oil & Gas Co., 187 Okla. 478, 103 P. 2d 526; Campbell v. Peery, 186 Okla. 51, 96 P. 2d 22.

We have held many times that where reasonable men might differ as to the facts established and from the inference to be drawn therefrom, the question of negligence is one for the jury. City of Enid v. Smith, 167 Okla. 381, 29 P. 2d 765; Wisdom v. Bernhardt, 170 Okla. 385, 40 P. 2d 679; Casualty Reciprocal Exchange v. Sutfin, 196 Okla. 567, 166 P. 2d 434.

I respectfully submit that there was sufficient evidence in this case to entitle the plaintiff to go to the jury. I dissent from the majority opinion in sustaining the demurrer to the evidence of the defendant Reid.