FRUECHTING et al. v. GILLEY et al.

No. 35124.

Supreme Court of Oklahoma.

July 14, 1953.

Darrah & Cook, Clinton, Dudley, Duvall & Dudley, Duke Duvall, Oklahoma City, for plaintiffs in error.

Ira Monroe, Meacham, Meacham, Meacham & Meacham, Clinton, for defendants in error.

HALLEY, Chief Justice.

Wanda Gilley and Betty McLean filed separate actions for personal injuries against Theo Früechting and George Fast Jr., individually and as partners doing business as Früechting & Fast Butane Company, in the District Court of Custer County. The cases grew out of the same accident and were consolidated for trial before a jury. Separate verdicts were rendered for each plaintiff, and the defendants have appealed. We shall refer to the parties as they appeared in the trial court.

Plaintiffs alleged that on August 19, 1950, they were guests in an automobile which was driven into the retail butane gas station of defendants in Weatherford for the purpose of filling the tank of the car with butane gas; that the defendants negligently permitted the vapor from the butane to escape into the air, then started the motor of one of defendant's trucks nearby, from which a spark escaped and ignited the gas which had escaped into the air and into the car in which plaintiffs were sitting, causing an explosion and fire within the car and around it, and resulting in plaintiffs' being severely injured by first, second and third-degree burns.

It was alleged that butane is a highly explosive and dangerous gas, and that defendants were negligent in failing to have proper equipment for handling it in that they failed to have a vapor return hose to the storage tank while the car tank was being filled and wholly failed to warn plaintiffs of the dangerous nature of butane gas.

Plaintiff Wanda Gilley prayed for $10,000 for pain and suffering and $20,000 for permanent injuries. Betty McLean made similar allegations and prayed for $10,000 for pain and suffering and $15,000 for permanent injuries. The defendants answered by general denial.

The jury returned separate verdicts for the plaintiffs. It awarded to Wanda Gilley $679.35 for medical expenses, $2,000 for pain and suffering, and $2,167 for loss of earning power accrued and to accrue. To Betty McLean it gave $702.75 for medical expenses, $2,000 for pain and suffering, and $3,000 for loss of earning power accrued and to accrue. The total verdict for Wanda Gilley amounted to $4,846.35, and for Betty McLean the sum of $5,702.75; and it was further ordered, upon stipulation of the parties, that judgment in favor of each plaintiff be appealed from in a single consolidated appeal.

Defendants contend that the court should have sustained their demurrer to plaintiffs' evidence and directed a verdict for the defendants because the evidence was insufficient to establish causal connection between the alleged negligent acts of defendants and the injuries suffered by plaintiffs.

The evidence of negligence produced by the plaintiffs consists principally of testimony showing that on the morning of August 19, 1950, plaintiffs were riding in an automobile driven by Austin Schroff and accompanied by Gene Moore. The car had been adjusted for the use of butane gas as a fuel. They had driven from Wichita, Kansas, the previous night and needed fuel. The driver of the car testified that defendants' station was the only retail butane establishment in that area, and that he had previously had the car filled at that station.

Defendants operated a wholesale and retail butane station on the highway a short distance out of Weatherford, Oklahoma. When Schroff and his companions approached the station on the morning mentioned, they found the gate open and drove in, but found no one there. Mr. Chapman, an employee of defendants, drove into the station shortly thereafter, having left to obtain some tools to adjust the motor of his truck, which was standing in the station. Schroff testified that he asked permission to fill his tank and that Mr. Chapman said "Go ahead and fill." He then brought the end of a hose to the car, opened the valve of the storage tank, and "kicked the gas on." He further testified that Mr. Chapman started the motor of his truck shortly afterward and that the explosion occurred. That the pump being used had no hose to return the vapor from the car tank to the storage tank; that fire regulations require a vapor return hose. In this instance, the vapor which had accumulated in filling the tank was turned into the air around the tank. Plaintiffs testified that shortly before the explosion they smelled gas while sitting in the car, the tank of which was being filled. When the explosion occurred, one of them ran from the car and the other was carried from the car by Gene Moore. The truck of Mr. Chapman was stationed 25 or 30 feet from the car. The plaintiffs were severely burned and were taken to a Clinton hospital, where they were treated for burns and released about 21 days later.

The undisputed testimony showed that both of the girls were severely burned on the face, arms and legs. There was no claim that defendants did not know of the volatile and explosive nature of butane gas. There is no evidence that any warning signs were around the storage tanks, and there is no claim that any oral warning of any kind was given plaintiffs by defendants' employee, Mr. Chapman, who was present at the time. Defendants advanced no theory as to what caused the explosion, other than the negligence of Austin Schroff, and no independent, intervening cause that could have been the proximate cause of the explosion. If any other cause than that alleged by plaintiffs was in fact the proximate cause, it was not claimed or supported by any evidence of defendants.

Defendants claim that the evidence shows that the negligence of Austin Schroff, driver of the car in which plaintiffs were riding, was the proximate cause of plaintiffs' injuries. Schroff testified as follows:

"Q. How much experience have you had in the butane business? A. I first started hauling butane in 1941, July 4, 1941, and I hauled butane for Mr. Noels in Kansas until June 1942 when I went in the army.

"Q. You had enough experience with it to know it is a very dangerous substance? A. It is not dangerous if it is properly handled. I would tell

you this—I would rather haul or handle propane than gasoline.

"Q. Mr. Schroff, knowing it is a dangerous substance why did you let them go ahead and fill that tank if you knew it wasn't a properly vented hose?

"(Objection overruled.)

"Q. Since you knew it was a dangerous substance to handle, why did you permit them to fill your car if you thought that the hose wasn't properly vented? A. There was no other facilities in the town. You can't pull out of one place and go to another like you can a gasoline station. I needed the fuel."

Schroff's companion, Gene Moore, testified as follows:

"Q. Do you know of your own knowledge what started it (the explosion)? A. All I know it could have been a spark from the truck that set the gas off.

"Q. How far was that truck from this automobile? A. I would say in the neighborhood of 25, 20 or 30 feet. I don't know the exact distance."

Defendants state in their brief that the testimony of Schroff is unbelievable and too improbable to warrant consideration, when he testified that it was improper to vent the vapor of butane into the air. We cannot agree with this contention.

Schroff, the driver of the car in which plaintiffs sat while its tank was being filled with butane gas, and Moore, his companion, testified that defendants' agent, Mr. Chapman, told them to vent the butane vapor into the air, and that Chapman, knowing that there was no vapor return hose, "kicked the gas on", meaning that he turned on the gas. The jury evidently believed this testimony, as it had a right to do.

Defendants claim that the negligence of Schroff was the proximate cause of plaintiffs' injuries. He testified that he had filled the tank at this station once before and that there was no other such station at which he could secure butane in that vicinity. We cannot agree that the acts of Schroff were the proximate cause of the explosion. There is no evidence to indicate

that defendants were forced or coerced into filling the tank of Schroff's car with butane.

In A & A Cab Operating Co. v. Drake, 200 Okl. 229, 192 P.2d 1004, 1005, it was said in the fourth syllabus:

"Where an intervening cause is relied upon as a defense in an action for personal injury due to negligence, the issue whether the alleged cause other than the negligent act or omission of defendant proximately caused the injury is a question of fact for the jury's determination."

In Nelson v. Wasteka Oil Co., 196 Okl. 439, 165 P.2d 637, it was said in the second syllabus:

"Where evidence reasonably tends to establish original or primary negligence, and such evidence raises question of proximate cause of injury, whether original negligence or any intervening and independent cause, and reasonable men may draw different conclusions therefrom, the case is one for jury."

Much of plaintiffs' testimony was contradicted by testimony for the defendants. Defendants testified that their plant was equipped with a return vapor hose, and defendants' employee Chapman testified that the motor of his truck was not started just prior to the explosion. One witness testified that Mr. Chapman had stated that one of the plaintiffs had lighted a match just prior to the explosion, but Chapman did not so testify at the trial. There was competent evidence to establish a causal connection between the alleged negligence of defendants and the explosion from which plaintiffs' injuries resulted. The jury had a right to believe the testimony of plaintiffs' witnesses and to disregard that of defendants' witnesses.

The plaintiffs prayed in their petitions for damages for pain and suffering and for permanent injuries accrued and to accrue. Neither prayed for damages for loss of earning power or loss of earnings. They did allege that they had "life-long" and ugly scars as a result of their injuries. Neither testified to such facts.

In Instruction 18 the court instructed the jury that it might find for each plaintiff for medical and hospital expense, pain and suffering, and "for loss or impairment of earning power accrued, if any, and reasonably certain to accrue in the future, if any." The instructions nowhere directly mentioned any recovery for permanent injuries.

While plaintiffs plead that each had "lifelong ugly scars" as the result of their injuries, there is no testimony that such scars were permanent and no expert or medical testimony is found in the record.

The accident occurred August 19, 1950, and the case was tried approximately six months thereafter. Neither plaintiff was asked whether her scars were permanent.

Betty McLean testified that she had worked two weeks the latter part of November, 1950, and that this was the first time after the accident that she was able to work. She stated that she had earned $1.15 per hour working for Cudahy Packing Co. No mention of the hours worked is shown. There is no testimony as to what Wanda Gilley earned at any time. Neither was working at the time of the trial, but neither testified that she was unable to work or why she was idle. There is no testimony showing that they were unable to work or for how long such inability to earn would continue.

In Rhodes v. Lamar, 145 Okl. 223, 292 P. 335, 336, it was said in the ninth syllabus:

"Where the injuries described in a petition are of such nature and of such severity as to necessarily import a loss of time, the direct averment thereof in the pleadings may be dispensed with."

In Kennedy v. Van Horn, 77 Okl. 100, 186 P. 483, it was said in the body of the opinion:

"The rule appears to be well settled that special damages must be pleaded, and it is error to admit proof of such damages in the absence of such allegations. * * *

"It is equally well settled that diminished earning capacity from a personal injury is special damages, and to be recoverable must be especially claimed in the petition. * * *

"An allegation of 'permanent injury' is not equivalent to an allegation of diminished earning capacity. Scholl v. Grayson, 147 Mo.App. 652, 127 S.W. 415."

In the case before us there is no allegation of loss of earning power accrued or certain to accrue in the future. There is no prayer for recovery of damages for impairment of earning power. We cannot assume that the scars suffered by plaintiffs were "lifelong" in the absence of any testimony to that effect.

The injuries of plaintiffs may or may not have been permanent. They may or may not have reduced the earning power of plaintiffs. The injuries were not of such nature and severity as to relieve plaintiffs of the burden of making proof of their permanency. Such scars as remained at the time of the trial, more than six months from the date of the accident, were exhibited to the jury, but we cannot say that they were of such nature as to bring this case within the rule that expert testimony is not required to establish an objective injury. Such cases generally involve the loss of an eye, arm, foot or leg, or the paralysis of some member of the body, which constitutes a clearly discernible permanent injury.

We conclude that the judgment should be affirmed subject to the following: 1. That Wanda Gilley should remit within thirty days from the date this opinion becomes final in the sum of $2,167 which is that part of the judgment awarded her for loss or impairment of earning power and should the remittitur not be made this cause is reversed for a new trial as to her. 2. That Betty McLean shall remit within thirty days from the date this opinion becomes final in the sum of $3,000 awarded her for loss of earning power and should the remittitur not be made this cause is reversed for a new trial as to her.

JOHNSON, V. C. J., and CORN, DAVISON, WILLIAMS, and BLACKBIRD, JJ., concur.

ARNOLD, J., dissents.

ARNOLD, Justice (dissenting).

Appellate courts should be practical as well as right. This court is behind on its docket. Time should be conserved where possible without detrimentally affecting the absolute duty to administer justice promptly.

There are two things beyond dispute in these cases: The evidence of the plaintiff in each case is amply sufficient to sustain the verdict of the jury on the elements of damages alleged, to wit: medical bills and pain and suffering (the separate verdict returned for Wanda Gilley on these elements was $679.35 for medical expenses and $2,000 for pain and suffering, and the separate verdict for Betty McLean was $702.75 for medical expenses and $2,000 for pain and suffering); the evidence is wholly insufficient to sustain the separate verdict returned for Wanda Gilley for $2,167 for loss of earning power and the separate verdict for Betty McLean for $3,000 loss of earning power. The judgments rendered on these separate verdicts are likewise separable as to the amounts awarded for each element of damages. The majority opinion is correct in holding that the verdicts and judgments on the item of loss of earning power are not sustained by the evidence and that there is no error in any other regard.

While there is some evidence on the element of damages, to wit: loss of earnings, it is not sufficient. The only objection to the instruction on damages and recovery is that the evidence is not sufficient to sustain the entire recovery. However, the verdict of the jury separates the elements of damages as hereinbefore shown and the court's judgment likewise separated them. In order to do justice promptly and practically the separate parts of the judgment in each case that is sustained by the evidence ($679.35 medical bills and $2,000 pain and suffering in the Gilley case and $702.75 medical bills and $2,000 pain and suffering in the McLean case) should be affirmed and the cause otherwise reversed for new trial. Holbrook v. Moore, 177 Okl. 173, 58 P.2d 865; Cramer v. Bock, 21 Wash.2d 13, 149 P.2d 525;

Downer v. Southern Union Gas Co., 53 N.Mex. 354, 208 P.2d 815; Davis v. Baum, 192 Okl. 85, 133 P.2d 889; Rawle v. McIlhenny, 163 Va. 735, 177 S.E. 214, 98 A.L.R. 930, 39 Am.Jur., New Trial, Sec. 20–24; 3 Am.Jur., Appeal and Error, Secs. 1226 and 1227. These cases are specific authority on partial affirmance and partial reversal with directions.

Only one of the elements of damages is not sustained by the evidence. Under a partial affirmance and reversal and direction to take evidence on the reversed portion of the judgments, to wit: loss of earnings, these cases can be retried in two hours time each.

It is no wonder that the majority opinion cites no authority supporting the affirmance of the judgments here upon condition of remittitur of that portion of the judgments for loss of earnings and directing the court below to grant a complete new trial if the remittitur is not made. There is no such authority. However, I admit that this court can establish such precedent if it wants to.

The establishment of such precedent and its applicability in this case is in my judgment very impractical.